[No. 15925.   *En Banc*.   January 25, 1921.]

# THE STATE OF WASHINGTON, *Respondent*, v. MIKE · HENNESSY, *Appellant*.[1]

INDICTMENT AND INFORMATION (77)—DUPLICITY—CRIMINAL SYN-DICALISM—OFFENSES.   Laws of 1919, p. 518, § 1, defines criminal syndicalism as a single offense of effecting or resisting any industrial, economic, social or political change in any of the different ways or means specified, which are not repugnant to one another, and does not define separate and distinct offenses arising out of disconnected transactions; hence an information substantially in the language of two subdivisions of the act charges but one offense and is not duplicitous.

INDICTMENT AND INFORMATION (34, 60)—INSURRECTION—CERTAIN-TY.   An information charging criminal syndicalism substantially in the language of the statute, is not indefinite and uncertain, where it alleges the time and place, the connection of the accused with the Industrial Workers of the World and the purpose of that organization.

CONSTITUTIONAL LAW (59)—CIVIL RIGHTS—FREEDOM OF SPEECH. The criminal syndicalism statute, Laws 1919, p. 518, § 1, intended to prevent the teaching of crime, sedition, violence or intimidation as a means of overcoming the present social order is not unconstitutional as abridging the freedom of speech.

TREASON—OFFENSES—POWERS OF STATE.   The syndicalism statute, Laws 1919, p. 518, § 1, against effecting or resisting any industrial, economic, social or political change in any of the ways specified, is not an attempt to punish constructive treason beyond the power of the state, or in violation of the Federal constitution, art. 3, § 3, providing that treason against the United States shall only consist of levying war against them, etc.; since the state may pass laws to aid or assist the national government and is one of its component parts.

CONSTITUTIONAL LAW (102)—PRIVILEGES AND IMMUNITIES—CLASS LEGISLATION.   There is nothing on the face of the criminal syndicalism statute, Laws 1919, p. 518, § 1, showing an intention to restrict the discussion of economic and industrial questions among labor organizations; but the regulations bear with equal weight upon all in a like situation, and the act is not objectionable as class legislation.

[1]Reported in 195 Pac. 211.

CRIMINAL LAW (461)—PUNISHMENT—CRUEL AND UNUSUAL. The criminal syndicalism act, Laws 1919, p. 518, § 1, making certain acts a felony without prescribing the penalty and leaving the same subject to the general law in such case, Rem. Code, § 2265, which prescribes a penalty of not to exceed ten years in the penitentiary, or a fine not exceeding $5,000, or both, is not unconstitutional as providing cruel or unusual punishment.

SAME (3-1)—STATUTORY PROVISIONS—CREATION AND DEFINITION OF OFFENSES. The criminal syndicalism act, Laws 1919, p. 518, § 1, is not void for indefiniteness in that the phrase "or which will tend to encourage disrespect for the law" is uncertain.

STATUTES (22)—TITLES AND SUBJECTS—SUFFICIENCY. The title to the criminal syndicalism act, Laws 1919, p. 518, § 1, sufficiently indicates the particular subject and is "not too general for any purpose," as the title need not be an index to the act.

CONSTITUTIONAL LAW (53)—PERSONAL RIGHTS—LIBERTY AND SECURITY. The criminal syndicalism act, Laws 1919, p. 518, § 1, subd. 3, making it unlawful for any person to become a member of any group of persons formed to advocate the prohibited acts, is not unconstitutional as unduly infringing the personal liberties of the citizen.

INSURRECTION—ELEMENTS OF OFFENSE—INTENT. Knowledge or intent is not an element of the offense of criminal syndicalism, Laws 1919, p. 518, § 1, and one voluntarily becoming a member of a group of persons prohibited by statute and doing this act is guilty whether he intended to violate the law or not.

CRIMINAL LAW (27)—JURISDICTION—LOCALITY OF OFFENSE. The criminal syndicalism act, Laws 1919, p. 518, § 1, makes it an offense to "be a member" of a group of persons formed to advocate certain prohibited things, regardless of the county in which accused "joined" the organization; hence, although one joined in Y. county, he may be informed and proceeded against in the county in which he was found and committed the prohibited acts.

Appeal from a judgment of the superior court for Clarke county, Back, J., entered January 23, 1920, upon a trial and conviction of criminal syndicalism. Affirmed.

*George F. Vanderveer* and *Ralph S. Pierce*, for appellant.

*W. E. Yates*, for respondent.

*The Attorney General*, amicus curiae.

MAIN, J.—The defendant was charged by an amended information with what is generally called criminal syndicalism, though it is not so named in the statute defining the crime. A demurrer to the information was overruled, the trial resulted in a verdict of guilty, and the defendant appeals.

The charging part of the information is as follows:

"That he, the said Mike Hennessy, 'on or about the 15th day of November, 1919, in the county of Clarke and state of Washington, then and there being, did then and there wilfully, unlawfully and feloniously organize, help to organize, give aid to, and voluntarily assemble with or be a member of 'The Industrial Workers of the World,' 'in a voluntary assembly and group of persons formed to unlawfully, feloniously, and anarchistically advocate, advise, and teach crime, sedition, violence, intimidation and injury as a means of effecting industrial, economic, social and political change,' and the said defendant, Mike Hennessy, did then and there print, publish, circulate, distribute, and display books, pamphlets, handbills, documents and other written and printed matter, advising, advocating, teaching and justifying crime, sedition, violence, intimidation and injury as a means and way of effecting industrial, economic, social and political change, contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Washington."

The statute (Laws of 1919, p. 518, ch. 174), upon which the information is based is as follows:

"§ 1.    Whoever shall

"(1)    Advocate, advise, teach or justify crime, sedition, violence, intimidation or injury as a means or way of effecting or resisting any industrial, economic, social or political change, or

"(2)    Print, publish, edit, issue or knowingly sell, circulate, distribute or display any book, pamphlet, paper, handbill, document, or written or printed matter of any form, advocating, advising, teaching or jus-

tifying crime, sedition, violence, intimidation or injury as a means or way of effecting or resisting any industrial, economic, social or political change, or

"(3) Organize or help to organize, give aid to, be a member of or voluntarily assemble with any group of persons formed to advocate, advise or teach crime, sedition, violence, intimidation or injury as a means or way of effecting or resisting any industrial, economic, social or political change,

"Shall be guilty of a felony."

Comparing the information with the statute, it will be seen that the charge is substantially in the language of subdivisions two and three of the statute. The statute makes it a felony for a person to do any of the things specified therein "as a means or way of effecting or resisting any industrial, economic, social or political change." The crime defined in the act, speaking generally, is one against the present social order and may be committed in any of the ways therein set out.

It is first contended that the information was duplicitous in that it charged more than one crime and that for this reason the demurrer thereto should have been sustained. The information does charge the appellant with helping to organize, voluntarily assembling with, giving aid to and being a member of the Industrial Workers of the World and that he did print, publish, circulate and distribute certain books, pamphlets and so forth. It is the general rule that where a single offense may be committed in different ways or by different means, it may be charged in the information to have been committed by more than one of the ways or means. *State v. Pettit,* 74 Wash. 510, 133 Pac. 1014; *State v. Gaul,* 88 Wash. 295, 152 Pac. 1029; *State v. Wingard,* 92 Wash. 219, 158 Pac. 725; *State v. Klein,* 94 Wash. 212, 162 Pac. 52; *State v. Brummett,* 98 Wash. 182, 167 Pac. 120.

On the other hand, if the statute defining the crime charges separate and distinct offenses arising out of disconnected transactions, an information which charges more than one of the offenses would be duplicitous. *State v. Dodd*, 84 Wash. 436, 147 Pac. 9; *Seattle v. Molin*, 99 Wash. 210, 169 Pac. 318.

While the general rule is plain enough, it is not always easy to determine whether the information, based upon a particular statute and in substantially the language thereof, charges separate and distinct offenses or whether it charges one offense and sets out the various ways or means by which that offense may be committed. The appellant in this case contends that the information charges separate and distinct offenses. If this be true, then the statute upon which it is based defines not one offense and specifies the ways in which it may be committed, but defines a number of separate and distinct offenses.

The chief reliance of the appellant is upon the *Dodd* and *Molin* cases just cited. In the *Dodd* case, the defendant was charged under a statute which made it an offense to place a female in charge of another person for an immoral purpose or, being the husband of a woman, conniving and consenting to her leading a life of prostitution, or soliciting persons to go to a house of prostitution for an immoral purpose. It was there held that the information was duplicitous because the act of the husband in placing his wife in custody of another person for an immoral purpose and with intent that she shall lead a life of prostitution had no readily perceived connection with the act of soliciting persons to go to a house of prostitution for an immoral purpose. In the *Molin* case, the defendant was charged with violating the general liquor ordinance of the city of Seattle, and it was claimed that the complaint was bad for duplicity. The defendant there was charged

with manufacturing liquor, selling, bartering and disposing of liquor, buying, receiving and giving liquor for an unlawful purpose, buying liquor contrary to law and having a prohibited amount of liquor in his possession. It was there held that the complaint charged at least five separate and distinct offenses arising out of disconnected transactions based upon wholly different provisions of the ordinance. It is easy to see that the ordinance which defines manufacturing liquor, buying liquor contrary to the law, and so forth, charges separate and distinct offenses. There was no major crime which could be committed in each of the specified ways as defined in the ordinance under consideration in that case.

The test, applied by these two cases, to determine whether the act charges and the statute defines more than one crime or whether it defines a single crime which may be committed in a number of different ways is whether there is a readily perceived connection between the things charged. If there is no reasonable connection, one with the other, and they are disconnected transactions, the information is duplicitous.

Applying this test to the present case, it appears as already indicated, that the crime defined by the statute and of which the appellant is charged was that of "effecting or resisting any industrial, economic, social or political change" in any of the ways specified in the act. It was not made criminal to do the things there mentioned for any other purpose. It would seem that there is a direct and immediate connection between organizing, helping to organize, giving aid to and so forth, and voluntarily assembling which has a definite object to accomplish and the printing, publishing, circulating, and so forth, of books, pamphlets and other printed matter having for its object the same purpose. One is the organizing, the other the propaganda put

forth and the result to be accomplished is the same, each having the common object as defined by the statute of effecting or resisting any industrial, economic, social or political change. The information upon which the appellant was tried in this case does not fall within the rule of the *Dodd* and *Molin* cases, but comes within the general rule above stated, where a single offense may be committed in different ways it may be charged in the information to be committed in more than one of the ways.

There is another reason why the trial court was correct in overruling the demurrer, and that is that the ways and means specified in the statute by which the crime may be committed are not repugnant to each other. *State v. Pettit,* and *State v. Wingard, supra.* In the *Wingard* case it was said:

"But this court has held, and the general rule is, that 'where a single offense may be committed in different ways or by different means, it may be charged in the information to have been committed by more than one of the ways or means, provided the ways or means charged be not repugnant to each other.' " Citing the *Pettit* and the *Gaul* cases.

In the *Klein* case it was said:

"In other words, the defining statute enumerates disjunctively a series of acts, either of which separately, or all together, so far as they are not in their nature inconsistent, may constitute the single offense of larceny. In such a case it is thoroughly settled that the information may charge in a single count the commission of the offense in any, or, by conjunctive allegation, in all of the enumerated and not inconsistent ways."

Other cases from this court might be cited and reviewed but a detailed consideration, of how the court has held in each specific case, would greatly extend this opinion and would add nothing to the general rule. Each case must depend to a considerable extent upon

the statute presented for construction and whether the information drawn thereon is duplicitous may be determined by the tests above indicated.

The information was not duplicitous and the demurrer thereto was properly overruled.

The second point is that the information is indefinite and uncertain and therefore did not sufficiently advise the appellant as to the charge which he was required to meet. The statute (Rem. Code, § 2065) provides that an information to be sufficient must distinctly set forth in ordinary and concise language, without repetition and in such a manner as will enable a person of common understanding to know what is intended to be charged. The holding in *State v. Lowery,* 104 Wash. 520, 177 Pac. 355, is controlling on this point. There the defendant was charged in the substantial language of the statute with the crime of criminal anarchy. The statute in some respects is similar to the statute here under consideration. There the information alleged the time and place of the alleged crime, the connection of the defendant with the Industrial Workers of the World, and the purpose of that organization. It was there said:

"The information, surely, is sufficient to notify the defendant of the charge which he is called upon to defend against; it specifies the time, the place, and the means by which the crime is alleged to have been committed, and it so charges it that a person of common understanding cannot mistake its meaning. Had the defendant not been satisfied that the facts had been plead with sufficient elaboration to fully apprise him of the charge, he could have demanded that this enlightenment be furnished him by means of a bill of particulars, but he did not seek that source of information, being content to demur to the information, which charges the crime substantially in the language of the statute, and states the acts which constitute the offense in ordinary and concise language."

The information in question alleges the time and place, the connection of the defendant with the Industrial Workers of the World, and the purpose of that organization. As pointed out in the *Lowery* case, no bill of particulars was demanded there and none was demanded in this case. The information was not bad for indefiniteness and uncertainty.

The third point is that the syndicalism statute amounts to an attempt to punish constructive treason and is unconstitutional. The argument in the appellant's brief on this question takes a wide range, during the course of which the provision of the Federal constitution which provides that no law shall be made abridging the freedom of speech is quoted. Also the provision of the same constitution which provides that no law shall be passed which abridges the privileges and immunities of the citizens of the United States, and § 3, art. 3, which is: "Treason against the United States shall consist only in levying war against them, or in adhering to their enemies, giving them aid and comfort." Section 5, art 1, of the constitution of this state provides: "Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right." In *State v. Fox,* 71 Wash. 185, 127 Pac. 1111, the defendant was convicted under the statute which provided that every person who prints, publishes or circulates any written or printed matter advocating or encouraging a breach of the peace or violence which would tend to encourage less respect for law, should be guilty of misdemeanor. The law was sustained and in the course of the opinion it was said:

"While the constitutions of the United States and of this state guarantee the right to freely speak, write and publish upon all subjects, it is not meant thereby that persons may with impunity advocate disregard of

law; or, as said in *People v. Most*, 171 N. Y. 423, 64 N. E. 175, 58 L. R. A. 509: 'While the right to publish is thus sanctioned and secured, the abuse of that right is excepted from the protection of the constitution, and authority to provide for and punish such abuse is left to the legislature. The punishment of those who publish articles which tend to corrupt morals, induce crime or destroy organized society, is essential to the security of freedom and the stability of the state.' "

That case was taken to the United States supreme court and the holding of this court was affirmed. *Fox v. Washington*, 236 U. S. 273. In *State v. Moilen*, 140 Minn. 112, 167 N. W. 345, the court sustained an act similar to the one here in question. The fact that treason is defined in the Federal constitution does not deprive the state legislature of the power to enact the statute which is intended to prevent the teaching of crime, sedition, violence or intimidation as a means of overcoming or destroying the present social order. In *Ex parte Bollman*, 8 U. S. 74, during the course of the opinion it was said:

"Crimes so atrocious as those which have for their object the subversion by violence of those laws and those institutions which have been ordained in order to secure the peace and happiness of society, are not to escape punishment, because they have not ripened into treason. The wisdom of the legislature is competent to provide for the case; and the framers of our constitution, who not only defined and limited the crime, but with jealous circumspection attempted to protect their limitation, by providing that no person should be convicted of it, unless on the testimony of two witnesses to the same *overt* act, or on confession in open court, must have conceived it more safe, that punishment in such cases, should be ordained by general laws, formed upon deliberation, under the influence of no resentments, and without knowing on whom they were to operate, than that it should be inflicted under the influence of those passions which the occa-

sion seldom fails to excite, and which a flexible defini-
tion of the crime, or a construction which would render
it flexible, might bring into operation. It is, therefore,
more safe, as well as more consonant to the principles
of our constitution, that the crime of treason should
not be extended by construction to doubtful cases; and
that crimes not clearly within the constitutional defini-
tion, should receive such punishment as the legislature
in its wisdom may provide."

While the Federal government undoubtedly has
ample power to protect its sovereignty, it does not
necessarily follow from this that the legislature of a
state may not pass laws for the purpose of aiding or
assisting the national government. The state is one
of the component parts of the Federal government and
what affects the latter affects the former. *State ex
rel. Hart v. Clausen,* 113 Wash. 570, 194 Pac. 793.

The fourth point is that the statute is class legisla-
tion. The argument here seems to be based on the
assumption that it was "intended to restrict the dis-
cussion of economic and industrial questions among
labor organizations." There is nothing, however, on
the face of the act to justify this assumption and the
court in considering the question is governed by its
terms. The legislature has power to pass all needful
police regulations and so long as such regulations bear
with equal weight upon all in like situation or of the
same class, they are upheld by the courts. *State v.
Fraternal Knights & Ladies,* 35 Wash. 338, 77 Pac.
500; *State v. Nichols,* 28 Wash. 628, 69 Pac. 372; *State
v. Nichols,* 61 Wash. 142, 112 Pac. 269, Ann. Cas. 1912B
1088. The act is general in its terms and provides
that "whoever" shall do the things there prohibited,
shall be guilty of a felony. Under this language any-
one, no matter what his business association or pro-
fessional calling might be, who did the things pro-
hibited by the act, would be subject to its provisions.

The fifth point is that the statute violates the constitutional prohibition against cruel and unusual punishments. It will be observed that the act makes the doing of the prohibited things a felony but does not fix a penalty. No penalty being fixed in the act the punishment would be that prescribed for a felony but not fixed by the statute defining the crime. Remington's Code, § 2265, provides that every person convicted of a felony for which no punishment is specifically prescribed by any statutory provision in force at the time of the conviction "shall be punished by imprisonment in the state penitentiary for not more than ten years or by a fine of not more than five thousand dollars, or both." Under this statute the trial court had the power to fix the term of imprisonment for any period not exceeding ten years or for any sum as a fine not exceeding five thousand dollars, or by both such imprisonment and fine. There is no merit in the contention that the statute violates the constitutional provision against cruel and unusual punishments. *State v. Feilen,* 70 Wash. 65, 126 Pac. 75, Ann. Cas. 1914 B 512, 41 L. R. A. (N. S.) 418.

The sixth point is that the statute is void for indefiniteness. In *State v. Fox, supra,* the same objection was made to the statute there being construed. In answering the objection it was said:

"The appellant also argues, and cites numerous cases to the effect, that a statute creating an offense must be certain, and that, where the law is uncertain, there is no law. This is no doubt the rule. We are satisfied it has no application to the statute under consideration. The statute provides: 'Every person who shall willfully . . . edit . . . any . . . paper . . . or printed matter . . . advocating . . . the commission of any crime . . . or which shall tend to encourage disrespect for law . . . shall be guilty of a gross misdemeanor.' It is argued that

the phrase 'or which shall tend to encourage disrespect for law' is entirely uncertain. But it has been held that a criminal statute is not void for uncertainty because it denounces acts which 'tend,' or are 'reasonably calculated,' to bring about prohibited results. *Waters-Pierce Oil Co. v. Texas,* 212 U. S. 86.''

In *State v. Brown,* 108 Wash. 205, 182 Pac. 944, one of the questions was whether the statute which made it a misdemeanor for any person to drive or propel a vehicle upon any public street or highway which with or without its load should be of such weight as to destroy or permanently injure such street or highway was void for indefiniteness. It was there said:

''The objection to the statute is that it does not definitely and clearly define the offense intended to be denounced by it. It is argued that a statute to be free from the objection of indefiniteness and uncertainty must be so far specific that a person may know in advance whether his act will or will not be a violation of the statute, and that this statute is not thus specific, since the operator of the vehicle cannot know until he actually makes the trial whether the load will or will not permanently injure the highway. In other words, the contention is that a statute, to be free from the objection that it is indefinite and uncertain, must specifically point out the acts which constitute the crime, not merely prohibit results produced by acts. But such is not the rule. The legislation in creating an offense may define it by a particular description of the acts constituting it, or it may define it as an act which produces, or is reasonably calculated to produce, a certain defined or described result. 16 C. J. 67. If this were not so, it would be easy to find many statutes now upon the books which are open to the objection of uncertainty, but which have heretofore never been suspected of that fault. As illustrations; the statutes making it an offense to willfully disturb any religious meeting (Rem. Code, § 2499), any assembly or meeting not unlawful in its character (Id., § 2547), or any school meeting (Id., § 4697), or the legislature, or either house

thereof (Id., § 2337), are all statutes which do not specify the particular acts which will constitute the disturbance; yet no case can be found where they have been held invalid for that reason, while there are many which have allowed convictions thereunder to stand. Other illustrations, without specifically enumerating them, can be found in the statutes against malicious mischief, injury to public utilities, injuries to property, the statutes defining and punishing vagrancy, obstructing an officer in the discharge of his duty, publishing articles tending to excite crime or a breach of the peace, and the like, all of which define the crime by the result it produces rather than by the specific acts constituting the offense.''

The act now before us is no more indefinite than were the statutes which were before the court in those cases; to hold that the syndicalism act is void for indefiniteness would require a modification of the holding in the cases just cited and especially in the *Brown* case. The act is not void for indefiniteness.

The seventh point is that the title of the statute is insufficient because it does not specifically refer to doing the prohibited things for the purpose of effecting any industrial or economic change, and for the further reason that the language used ''is too general for any purpose.'' It has frequently been held by this court that it is enough if the title of an act is sufficient to indicate to a person making inquiry that the act may cover a particular subject. It is not necessary that the title be an index to the body of the act. In *State v. George*, 84 Wash. 113, 146 Pac. 378, it was claimed that the title of the act which was ''An act relating to crimes and punishment and the rights and custody of persons accused or convicted of crime and repealing certain acts'' (Laws of 1909, p. 890, ch. 249), was not sufficient. It was held, however, that the language used was broad enough to cover the subject-matter of the act. Upon the authority of that case and

others that might be assembled the title of the act was sufficient. It has become the settled doctrine of this court that no act will be held unconstitutional on the ground that the title is not sufficient unless it clearly appears that such title does not meet the constitutional requirement.

The eighth point is that subdivision 3 of the act infringes upon the personal liberties of the citizen and is therefore unconstitutional. This point is more particularly directed to that portion of subdivision 3 which makes it unlawful for anyone to become a member of any group of persons formed to advocate, and so forth, the things prohibited by the act. In support of his contention on this point the appellant cites a line of cases like *Ex parte Smith,* 135 Mo. 223, 36 S. W. 629, 58 Am. St. 576, 33 L. R. A. 606, which holds that an ordinance forbidding anyone to associate with persons having the reputation of being thieves, burglars and so forth with intent to commit an offense is unconstitutional and that it invades the rights of personal liberty. Without either approving or disapproving the rule of the cases cited, it seems to us that there is a distinction between them and the present case. An ordinance or act which makes it unlawful to associate with persons having the reputation of being thieves, and so forth, is different from an act which makes it unlawful for anyone to organize or help to organize a group of persons to advocate and teach crime, and so forth, for the purpose which is specified in the syndicalism act. If it were in the legislative province, as we have found, to make it a penal offense to do the prohibited things in the act, including the organization of a group of persons, it would seem to follow that it were likewise within the power of the legislature to make it a penal offense for anyone to become a member of such group of persons or organization. The legis-

lature, in defining and providing for the punishment of crime, is exercising only one phase of the broad police power of the state. It did not exceed its power when it made it a penal offense for anyone to become a member of a group of persons organized for the purposes prohibited by the statute.

The ninth point is that the court erred in not submitting to the jury the question of the defendant's knowledge or intent to commit the crime with which he was charged. The court was requested to instruct the jury that, before they could find the appellant guilty, it was necessary for them to find that he had knowledge of the unlawful purposes and objects of the organization. This request was refused. The question, therefore, is presented as to whether, under the statute, criminal intent is a necessary element of the crime. The general rule upon this subject as stated in 8 R. C. L. 62, is as follows:

"The maxim *actus non facit reum, nisi mens sit rea,* does not always apply to crimes created by statute, and therefore if a criminal intent is not an essential element of a statutory crime, it is not necessary to prove any intent in order to justify a conviction. Whether a criminal intent or guilty knowledge is a necessary element of a statutory offense is a matter of construction to be determined from the language of the statute, in view of its manifest purpose and design. There are many instances in recent times where the legislature in the exercise of the police power has prohibited, under penalty, the performance of a specific act. The doing of the inhibited act constitutes the crime, and the moral turpitude or purity of the motive by which it was prompted and knowledge or ignorance of its criminal character are immaterial circumstances on the question of guilt. The only fact to be determined in these cases is whether the defendant did the act. In the interest of the public the burden is placed upon the actor of ascertaining at his peril whether his deed is within the prohibition of any criminal statute."

In *Ellis v. United States*, 206 U. S. 246, the accused had been convicted, while a contractor on certain public work, of requiring or permitting certain laborers "to work more than eight hours in any calendar day except in case of extraordinary emergency." This was an act of Congress and one violating it was made guilty of a misdemeanor. Upon the trial, the jury were instructed that if the accused intended to permit the man to work more than eight hours on a calendar day named, he intended to violate the statute. The effect of this instruction was to make the defendant guilty if he intended to do the thing complained of regardless of whether he intended to violate the law. It was there said:

"It is admitted that he was a contractor within the meaning of the act and that the workmen permitted to work more than eight hours a day were employed upon 'public work', and it is not denied that these workmen were 'mechanics'. The jury were instructed, subject to exception, that if the defendant intended to permit the men to work over eight hours on the calendar day named he intended to violate the statute. The argument against the instruction is that the word 'intentionally' in the statute requires knowledge of the law, or at least that to be convicted Ellis must not have supposed, even mistakenly, that there was an emergency extraordinary enough to justify his conduct. The latter proposition is only the former a little disguised. Both are without foundation. If a man intentionally adopts certain conduct in certain circumstances known to him, and that conduct is forbidden by the law under those circumstances, he intentionally breaks the law in the only sense in which the law ever considers intent."

In the present case the defendant voluntarily became a member of a group of persons prohibited by statute, and in doing this act, he became guilty of the offense whether he intended to violate the law or not. As was stated in the *Ellis* case,

"If a man intentionally adopts certain conduct in certain circumstances known to him, and that conduct is forbidden by the law under those circumstances, he intentionally breaks the law in the only sense in which the law ever considers intent."

Whether intent or guilty knowledge is an essential element of a statutory crime depends upon the intent of the legislature. There are statutes which, in defining a crime, expressly provide that guilty knowledge shall be an element thereof. There are other statutes, which the courts have construed to the effect that the legislature intended by the language used to make guilty knowledge or intent an element of the crime. In the syndicalism act, there is no provision making guilty knowledge or intent an element of crime, neither can it be said from the language used that the legislature had such intent. To sustain the appellant's contention upon this question, it would be necessary to write into the statute a proviso which the legislature did not place there. The case of the *State v. Strasburg,* 60 Wash. 106, 110 Pac. 1020, Ann. Cas. 1912B 917, 32 L. R. A. (N. S.) 1216, is not controlling. There the act which took away from a man, charged with certain crimes, the right to plead insanity in defense was held unconstitutional. That case differs from the present in this, that if the accused were insane he could not have formed the intent to do the particular act.

The tenth point is that the superior court of Clarke county had no jurisdiction because the appellant became a member of the Industrial Workers of the World in Yakima county and the evidence failed to show that there was any group of persons organized in Clarke county which was prohibited by the act of which the appellant was a member. In support of this contention, reliance is placed upon § 22, art. 1, of the constitution of this state which provides that, in criminal

prosecutions, the accused shall have the right to be tried in the county in which "the offense is alleged to have been committed." The argument is that, since the appellant became a member in Yakima county, under the statute he was not subject to be charged with being a member in Clarke county. The act reads upon this question in effect that, whoever shall "be a member of" any group of persons formed to advocate, advise and so forth, shall be guilty of a felony. Under the terms of the act, the appellant was a member whether he be in Yakima county or Clarke county, and it is the being a member which the statutes make penal. The superior court of Clarke county had jurisdiction.

The eleventh point is that the introduction in evidence of state's exhibit No. 1 was error because it is claimed that the appellant's rights under, §§ 7 and 9, art. 1, of the constitution of this state, and of articles 4 and 5 of the amendments to the constitution of the United States, had been invaded when it was obtained from him. The state's exhibit No. 1 was of appellant's membership card in the Industrial Workers of the World. To the contention on this point, there are two answers: First, the exhibit was not wrongfully or unlawfully obtained from the accused; and second, if it had been so obtained, the question was not raised until after the trial of the action had begun, and consequently came too late. *Adams v. New York,* 192 U. S. 585; *Weeks v. United States,* 232 U. S. 383. The amendments to the constitution of the United States relied upon contain no restrictions on the power of the state and are not applicable in the present case. *Brown v. New Jersey,* 175 U. S. 172. The manner in which the card was obtained in no way violated the rights of the accused under the state constitution.

·The twelfth point is that the court erred in its rulings upon the receipt and the rejection of evidence. As to the evidence received, of which complaint is made, it was admissible under the holding in *State v. Lowery, supra*. As to the evidence offered and rejected, it was either incompetent, or not relevant to any issue to be determined by the jury. To discuss this evidence in detail, would greatly prolong this opinion.

The final point is that there was no evidence to sustain the information. This point has been covered by what has been previously said and requires no further discussion. There was sufficient evidence to carry the question of the appellant's innocence or guilt to the jury.

The judgment will be affirmed.

All concur.