[No. 16350. Department Two. August 24, 1921.]

THE STATE OF WASHINGTON, *Respondent,* v. KENNETH McLENNEN, *Appellant.*[1]

EVIDENCE (2)—JUDICIAL NOTICE—WORDS OF COMMON MEANING— "SABOTAGE." A court may take judicial notice of the meaning of the word "sabotage," though a statute relating to the offense does not expressly define it.

CRIMINAL LAW (299) — TRIAL — INSTRUCTIONS — DEFINITION OF TERMS—"SABOTAGE." In a prosecution for criminal syndicalism, it was prejudicial error for the court to charge the jury that sabotage is a crime under the laws of the state and that any person practicing it is guilty of a felony, after declaring that it is defined as follows: . . . . . (giving the statutory definition of criminal syndicalism, which does not mention sabotage.)

Appeal from a judgment of the superior court for King county, Ronald, J., entered April 24, 1920, upon a trial and conviction of criminal syndicalism. Reversed.

*George F. Vanderveer* and *Ralph S. Pierce,* for appellant.

*Fred C. Brown* and *Chas. Ethelbert Claypool,* for respondent.

BRIDGES, J.—The appellant was charged by information as follows:

"He, said Kenneth McLennen, in the county of King, state of Washington, on the 28th day of January, 1920, did, then and there being, wilfully, unlawfully

[1]Reported in 200 Pac. 319.

and feloniously, be and is a member and organizer and did give aid to and did voluntarily assemble with, a group of persons formed to advocate, advise and teach crime, sedition, violence, intimidation and injury as a means and way of effecting or resisting an industrial, economic, social and political change, to-wit: By being a member and organizer of the Industrial Workers of the World, known as the I. W. W. The said Industrial Workers of the World being and is a group of persons or an organization advocating, advising, teaching crime, and justify crime, sedition, violence, intimidation or injury as a means or way of effecting or resisting an industrial, economic, social or political change.''

He was convicted and has appealed. Most of the reasons given by him for reversal of the case have heretofore been by this court determined against him in the case of *State v. Hennessy,* 114 Wash. 351, 195 Pac. 211, and subsequent cases. It will not be necessary for us to consider more than one or two of the points argued by him.

During the trial, the state introduced in evidence, and sufficiently identified, a pamphlet by Vincent St. John, entitled: ''The I. W. W.; Its History, Structure and Methods'', published by the I. W. W. publishing bureau. It was by this pamphlet that the state undertook to prove the objects and purposes of the organization, and that it came within the state syndicalism act, Laws of 1919, chs. 173, 174, pp. 517, 518. Among other things in the pamphlet is the following: ''Failing to force concessions from the employers by the strike, work is resumed and 'sabotage' is used to force the employers to concede the demands of the workers.''

The state did not offer any explicit testimony to show the meaning of the word 'sabotage', but the court instructed the jury concerning its meaning as follows:

"You are instructed that sabotage is a crime under the laws of the state of Washington, and is defined as follows:

"Whoever with intent that his act shall, or with reason to believe that it may, injure, interfere with, or obstruct any agricultural, stock raising, lumbering, mining, quarrying, fishing, manufacturing, transportation, mercantile or building enterprise wherein persons are employed for wage, shall wilfully injure or destroy, or attempt or threaten to injure or destroy any property whatsoever, or shall wilfully derange, or attempt or threaten to derange, any mechanism or appliance, shall be guilty of a felony.

" 'Whoever, with intent to supplant, nullify or impair the owner's management or control of any enterprise described in the preceding section, shall unlawfully take or retain, or attempt or threaten unlawfully to take or retain, possession or control of any property or instrumentality used in such enterprise, shall be guilty of a felony.' "   Laws of 1919, p. 517, §§ 1, 2.

The appellant objected to the giving of this instruction, and here vigorously attacks it. If the word "sabotage" has a common and well-understood meaning, then the court, without any testimony as to its meaning, had a right to define to the jury its meaning as commonly understood. But if the word does not have a commonly understood meaning, then the court would not be authorized to define its meaning, at least without testimony in the case showing what its meaning was. We have no doubt that the word "sabotage" has a common and well understood meaning, and that the court in this case had a right to tell the jury what that meaning was. Though the word is of somewhat recent coinage, its use has become so general and common that the court may take judicial knowledge of its meaning. A very recent edition of the Americana defines the word as follows:

"Sabotage, a method used by labor revolutionists to force employers to accede to demands made on them. It consists in a wilful obstruction and interference with the normal processes of industry. It aims at inconveniencing and tying up all production, but stops short of actual destruction or of endangering human life directly. The practices are varied. The original act of sabotage is said to have been the slipping of a wooden shoe, or 'sabot', of a workman into a loom, in the early days of the introduction of machinery, to impede production. Some of the more common forms are waste of materials; telling the exact truth to customers; obeying orders punctiliously, especially on railroads; using of bad materials so as to impair the standing of the employers; placing sand or emery in wheel bearings; loosening screws and nuts; cutting belts; sitting idle at machines; mislaying tools, and any number of petty devices for hindering and delaying production. . . ."

The court could, of course, define the word in its own language, or adopt for that purpose words from any other person or any statute. But there may be a question whether the statute quoted by the court gives, or was intended to give, a definition of the word "sabotage." It does not on its face purport so to do, nor is the word to be found anywhere in the act or its title. We do not, however, decide that the act does or does not properly define the common meaning of the word. But if it should be conceded that it is there properly defined, yet we are convinced the court committed prejudicial error in informing the jury "that sabotage is a crime under the laws of the state of Washington", and that any person practicing it "shall be guilty of a felony." The fact that, under the statute, sabotage is a crime can have no possible bearing on the definition of the word. It is not at all improbable that, by this instruction, the jury was misled into the belief that the defendant was charged with the statutory crime of

sabotage and not with a violation of the syndicalism law of the state, or the jury may have been otherwise prejudiced against the appellant because of the instruction to the effect that sabotage was a crime and punishable by imprisonment in the penitentiary. The court should simply have given the commonly accepted definition of the word sabotage, without instructing the jury that one guilty of practicing it had committed a crime under the law of the state.

The appellant raises certain other questions which we have not heretofore decided, but we find them to be without substantial merit.

For the error pointed out, the judgment must be reversed and the cause remanded for a new trial. It is so ordered.

PARKER, C. J., MAIN, MITCHELL, and TOLMAN, JJ., concur.