[No. 16715.   Department Two.   January 19, 1922.]

THE STATE OF WASHINGTON, *Respondent,* v. ED ASPELIN, *Appellant.*[1]

INSURRECTION—CRIMINAL SYNDICALISM—EVIDENCE—MEMBERSHIP IN I. W. W.   The act of a member of the Industrial Workers of the World in inciting others to join the organization is in the nature of giving aid to such organization, within the prohibition of Laws 1919, p. 518, against criminal syndicalism.

SAME—INSTRUCTIONS — SEDITION—DEFINITION.   In a prosecution for criminal syndicalism based on the act of defendant in inciting others to join the Industrial Workers of the World, it was prejudicial error for the court to charge the jury that "the term 'sedition' means to speak or to write against the character and constitution of the government or to seek to change it by any means except those prescribed by law;" in .view of the fact that the offense of sedition under the syndicalism statute does not include theoretical discussion.

[1]Reported in 203 Pac. 964.

Appeal from a judgment of the superior court for Jefferson county, Ralston, J., entered February 27, 1920, upon a trial and conviction of the crime of criminal syndicalism. Reversed.

*George F. Vanderveer, Ralph S. Pierce,* and *Leslie B. Sulgrove,* for appellant.

*Tom W. Holman,* for respondent.

HOVEY, J.—Appellant was convicted and sentenced for the crime of criminal syndicalism, under an information the charging part of which is as follows:

"That he, the said Ed Aspelin, in the county of Jefferson, state of Washington, on or about October 23rd, A. D. 1919, then and there being, and then and there being a member of the Industrial Workers of the World —commonly known as the 'I. W. W.'—did then and there wilfully, unlawfully and feloniously give aid to the said Industrial Workers of the World, which was then a group of persons formed to advocate, advise and teach crime, sedition, intimidation, violence and injury as a means and way of effecting an industrial, economic, social and political change, by then and there soliciting one Frank Taylor and one Matt McDonald then to secure cards of membership in, to join, to become members of and to espouse the aim, purpose and object of said Industrial Workers of the World, then so a group of persons formed to advocate, advise and teach crime, sedition, intimidation, violence and injury as a means and way of effecting an industrial, economic, social and political change."

The briefs were prepared before the various decisions of this court upon cases involving this statute and most of the questions raised have been disposed of by the case of *State v. Hennessy,* 114 Wash. 351, 195 Pac. 211.

There was evidence introduced from which the jury was justified in finding that the organization known as the I. W. W. comes within the prohibition of the Laws

of 1919, p. 518, the defendant was a member of the organization and one of its active exponents, being termed an organizer, and at the time alleged he approached a group of laboring men, including the men mentioned in the information, who were engaged in playing cards, and asked if any one cared to take out a red card. He did not get any encouragement when he first addressed them but returned a little later and again said: "Is there any body that wants to line up tonight," whereupon one of the men at the table said that he would take out a card tomorrow. The evidence further showed that both statements of the defendant were intended to mean and were understood to mean by the men addressed that they were invited to join and become members of the I. W. W.

One new question now presented is whether the acts alleged and proved constitute a violation of the statute. It is argued in the brief of the appellant that these acts merely showed an intent to commit a crime inasmuch as they were not successful in the result intended, and upon first impression the argument has some plausibility. We are satisfied, however, that they are something more than an attempt. This crime is largely made up of the circulation of ideas which have for their natural result the leading of men into committing acts of violence against persons and property. The basic principle is the entire overthrow of the existing order of things, and the literature shows quite clearly that, in the obtaining of this result, all restraints are to be abandoned. The use of the political methods afforded by law are expressly discountenanced as being inefficient, and what is called direct action is made a cardinal principle. In passing this act, the legislature evidently deemed it necessary to put a stop to activities which would naturally result in crimes

against persons and property, and made the mere membership in such an organization a crime. As charged and proven to the satisfaction of the jury, the defendant was such a member; and while that is not the crime of which he was convicted, yet his status as such would make any act of his, in inciting others to join, have the nature of giving aid to the organization.

Another point raised is the claimed error in giving the following instruction:

"The term 'sedition' means to speak or to write against the character and constitution of the government or to seek to change it by any means except those prescribed by law."

The trial court was probably lead to adopt it by reason of the fact that it occurs under the title "sedition" in several compilations as the law of England. The citation supporting the statement in these works is *State v. Shepherd*, 177 Mo. 205, 76 S. W. 79, 99 Am. St. 624. This was a contempt proceeding and, in the course of the recital of a good deal of history, the statement was made that this was the law of England but the English rule is stated as:

"The only offense of this general character which is known to our law is attempt, 'by word, deed, or writing, to promote public disorder, or to induce riot, rebellion, or civil war, which acts are still considered seditions and may, by overt acts, be treason.'"

The authority cited is Odgers, Libel and Slander, p. 419. That author shows that acts were considered to be sedition under the earlier cases which would not be sufficient to constitute the crime under the more modern law, and uses in that connection the following language:

"But mere theoretical discussions of abstract questions of political science, comparisons of various forms and systems of government, and controversies as to details of our own constitutional law are clearly permissible."

There does not seem to be any American case on prosecution for sedition. The definitions given in our books of reference all embrace the ingredient of active wrong-doing, such as:

"A factious commotion in a state; the stirring up of such a commotion; incitement of discontent against government and disturbance of public tranquillity, as by inflammatory speeches or writings, or acts or language tending to breach of public order."—Century Dictionary.

The accompanying words in our statute, "crime, violence, intimidation or injury", show sedition is there used as meaning something more than theoretical discussion which would be sufficient under the instruction.

We think it would be going altogether too far to say that any one who would write a letter advocating a change in our constitution would be guilty of crime, unless it was accompanied by matter which incited violence or some act of a criminal nature. This instruction is not helped by any of the other instructions given, and we cannot say that it was not prejudicial to the defendant. We therefore find it necessary to reverse the judgment on this ground.

There are other errors alleged, but in view of our decisions in other cases under this act, these questions will probably not arise upon another trial.

The judgment appealed from is reversed and a new trial ordered.

PARKER, C. J., MAIN, HOLCOMB, and MACKINTOSH, JJ., concur.