[Crim. No. 574. Fourth Dist. July 11, 1946.]

THE PEOPLE, Respondent, v. TOM DUTRA, Appellant.

312

Leo R. Friedman and John F. Pryor for Appellant.

Robert W. Kenny, Attorney General, John F. Hassler, Jr., Deputy Attorney General, and Roger R. Walch, District Attorney, for Respondent.

BARNARD, P. J.—The defendant was charged with a violation of section 288a of the Penal Code and, in a second count as a separate offense but connected in its commission with the first, with contributing to the delinquency of a minor. A jury found him guilty on both counts and he was sentenced

to prison on the first count and to jail on the second count, the sentences to run concurrently. He has appealed, as to each count, from the judgment and from an order denying his motion for a new trial.

The appellant operated a rooming house in Hanford, known as the Valley Rooms, using several of the rooms as his living quarters. The incidents in question occurred on the evening of June 21, 1945, in these living quarters. In addition to Dutra, there were present three army officers named Nansel, Robinson and Fox, and a 17-year-old boy named Silvas, who was a civilian employee at a near by army base. The three officers arrived at 8 p. m. and were introduced to the appellant by Silvas, who was already there. They all began drinking and talking, and in about an hour the conversation drifted into sex matters. During the next two hours a number of improper and lewd acts occurred, including the fondling of each other, and the putting on of women's garments, by at least two of the men. About 11 o'clock Nansel and Robinson went into an adjoining bedroom where they continued such fondling. The testimony is that "no sex occurred" while they were there, and there is no evidence that they violated section 288a or made any attempt to do so. After a few minutes Nansel asked Robinson to leave, and he returned to the living room where the others were. The appellant then entered this bedroom and shortly thereafter a violation of section 288a was committed by Dutra and Nansel. No other act of that nature was committed by any of these parties on this occasion.

Nansel admitted the essential facts in his testimony, and Robinson and Silvas testified that they saw the consummation of the act in question through the partially open door. Fox had been transferred and was not available as a witness. There is no evidence that he took any active part in any of the proceedings on that evening. The evidence, if it may be accepted, was overwhelming as to the guilt of the appellant. It is contended, however, that Nansel, Robinson and Silvas were all accomplices and that there is no corroboration of their testimony. The court instructed the jury that Nansel was an accomplice but, with respect to Silvas and Robinson, left that matter to the jury, as a question of fact.

The appellant first contends that both Silvas and Robinson were accomplices as a matter of law. With respect to Silvas it is argued that he admitted that he had previously

engaged in acts of degeneracy with various persons, including one such act with Nansel; that he made the arrangements for this gathering; that he testified in reference to Dutra that "I knew that in case I brought any men up, he wanted to have sex with them"; that he admitted that he told Robinson that Dutra was a "character" or a "queer," a homosexual pervert; and that he took an active part in the indecent things which occurred in the living room, including the putting on of the costume of a Spanish dancer. While Silvas testified that he knew that Dutra had such things in mind, in other words that he knew Dutra's nature and proclivities, there is no evidence that Dutra told him to bring these men for this purpose and none that any such message was conveyed to them. Silvas testified that he told Robinson that Dutra was a "character" or a "queer." In response to a question, he then said that by these words he meant that Dutra was "homosexual." There is no evidence that this meaning was communicated to Robinson or understood by him. Moreover, there is considerable contrary evidence on this issue, including evidence which strongly suggests that Silvas had two other reasons, more personal to himself, for inviting these officers on this occasion. The question as to whether Silvas was an accomplice was clearly one of fact and not one of law.

As to Robinson, it is contended that he was advised by Silvas, when invited to the party, that Dutra was a homosexual; that he admitted that he first attempted to do the thing denounced by section 288a upon Nansel, but was unable to arouse Nansel's interest; that Silvas testified that Robinson then agreed that Dutra should go into the room and "complete the act which Robinson had commenced"; and that Robinson participated in the general acts in the living room which preceded the act in question. Not only is there conflicting evidence on this issue, but the record does not bear out some of these contentions. Robinson did not admit that he attempted to do the act denounced by section 288a and there is no evidence that he did so. Silvas did not testify that Robinson agreed, when he came out of the bedroom, that Dutra should enter the room, or that he should "complete the act which Robinson had commenced" and there is no evidence that Robinson had commenced any such act. Robinson testified that Silvas had asked him several times to come and meet Dutra, telling him that Dutra was wealthy, had a large house, entertained a great deal and was a good host, and that Dutra

wanted to meet him; that Silvas did not tell him anything else about Dutra, made no reference to Dutra's moral or sexual inclinations, and did not tell him that Dutra was a queer character. Robinson further testified that he had known Silvas as an employee waiting on tables at the officers' club, that except for that he had had no contact with him, that he did not accept his previous invitations because he did not consider it proper to go alone with this civilian employee, and that he finally went because other officers were to go along. The most that can be said is that there is a conflict in the evidence and the question as to whether Robinson was an accomplice was one of fact and not one of law.

It is next contended that in passing on the accomplice issue, as a question of fact, the jury was not properly instructed in that the court refused to give four instructions requested by the appellant ''to the effect that a conspirator was an accomplice.'' It is argued that the theory of appellant's defense was that Silvas and Robinson were conspirators, and therefore accomplices, in the crime committed by Nansel and Dutra. In support of the contention that he was entitled to have the jury instructed on this theory of the case *People* v. *Williamson,* 6 Cal.App. 336 [92 P. 313], is cited, wherein it is stated that '' 'However incredible the testimony of the defendant, he was undoubtedly entitled to an instruction based upon the hypothesis that his testimony was entirely true.' '' In this case the appellant did not testify and produced no evidence. In support of the contention that Silvas and Robinson were conspirators and therefore accomplices particular reliance is placed upon *People* v. *Lima,* 25 Cal.2d 573 [154 P.2d 698] and *People* v. *Jordan,* 24 Cal.App. 2d 39 [74 P.2d 519]. In the first of these cases a thief and the receiver of stolen property were held to be accomplices where both crimes were shown, without conflict, to have been committed in accordance with a prearranged plan to that end. Not only did the result appear as a matter of law, but the basic elements and circumstances were entirely dissimilar to those here appearing. In the Jordan case a large number of offenses were planned, a large number were committed, all or nearly all of those present being involved, and there was a wealth of evidence of agreement and plan which is entirely dissimilar and completely at variance with the evidence in this record.

The first of the four requested instructions began as follows:

"Where two or more persons agree together, either expressly or tacitly, to the commission of a crime and all such persons are present at the time such alleged crime is committed and either actively participated in the commission of such crime, or aided or abetted such crime, or counseled, advised or instigated the commission of such crime, each of said persons is an accomplice of the others and no one of them can be convicted of such crime on the uncorroborated testimony of the others. . . ."

In other instructions the court fully instructed the jury to the same effect and almost in that identical language, with the exception that they did not refer to an agreement. That instruction then went on to state that if it was found that Silvas, Nansel and Robinson "agreed, either expressly or tacitly, that on or about the time set forth in the information the defendant (and Nansel) should commit the crime of violating section 288a of the Penal Code," then all of said parties were accomplices in the commission of said crime.

The second of these instructions stated that when two or more parties enter into a conspiracy to commit a crime of a certain class each conspirator is deemed guilty of every such crime committed in furtherance of the conspiracy by any of the conspirators, and each is an accomplice. It was then stated that if it was found that Nansel, Silvas, Robinson and Dutra met on this occasion pursuant to a prior understanding or agreement that they would so meet for the purpose of indulging in homosexual acts, or if there was no such prior agreement but after meeting they expressly or tacitly agreed "that they would then and there commit homosexual acts one with the other" then "all of said parties so agreeing" were conspirators, and each was an accomplice of the other parties to the agreement. It may be observed in passing that, while there is some evidence that would justify an inference that by their acts on this occasion some of these parties helped or encouraged the commission of the crime which occurred, there is no evidence sufficient to support a finding of an agreement looking toward the commission of such an offense. Moreover, this instruction is so drawn that, if other considerations are overlooked, it could apply only to Nansel and Dutra. The court instructed the jury that Nansel was an accomplice.

The third requested instruction is very similar to the second with the exception that it included Fox among the parties named. The fourth instruction repeats almost exactly the

opening part of the first instruction which is above quoted. That is followed by the statement that if it should be found that Silvas, Nansel, Robinson, Fox and the defendant all agreed that at or about this time Dutra and Nansel should meet in the presence of the others and commit the crime of violating section 288a then all of said parties are accomplices in the commission of said crime. Again, the correct part of this instruction was fully covered and there is an entire absence of any evidence to support a finding that these parties agreed that the two named should commit this offense in the presence of the others.

Aside from certain legal defects in these refused instructions, and apart from evidentiary deficiencies which made portions of them inapplicable, the essential elements were sufficiently covered in the instructions which were given. The court gave all the usual instructions on this issue, including the provision of section 31 of the Penal Code, telling the jury that no person can be convicted upon the uncorroborated testimony of an accomplice, that there must be evidence in addition to the testimony of such accomplices tending to connect the defendant with the crime, and what was necessary to make anyone an accomplice. Among other things, the jury was told the following: That all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense or aid or abet in its commission, or not being present have advised and encouraged its commission, are principals; that ''all persons concerned in the commission of a crime whether they directly commit the act constituting the offense, or aid or abet in its commission, or not being present have advised and encouraged its commission, are accomplices of all other persons concerned in the commission of such crime, whether such other persons directly committed the act constituting the offense or aided or abetted in its commission, or not being present have advised and encouraged its commission''; that the expression ''to aid or abet'' means being present, either actually or constructively, at the time and place of the offense and doing some act which renders aid to the perpetrator in the commission of the offense; that, in other words, the aiding and abetting of another person means to knowingly and with criminal intent actually aid, promote, encourage or instigate, by act or counsel, or by both act and counsel, the actual commission of the offense; that either Robinson or Silvas should be considered an accomplice

if the evidence showed that he participated with the defendant in the act charged or that he did "knowingly and with criminal intent aid, promote, encourage or instigate said act by either act or counsel, or by both act and counsel"; that to constitute a person an accomplice he must be properly liable to prosecution for the identical offense; that an accomplice is one who is present, either actually or constructively, and who rendered aid to the perpetrator in the commission of the offense or advised and encouraged its commission, and who was also subject to prosecution for the identical offense; that if it was found that Robinson and Silvas were present when this offense was committed but it was further found that they did not participate in the act nor encourage or aid in the commission of the act, then they were not accomplices; and that the testimony of one accomplice could not be considered as corroborating the testimony of another accomplice to the same crime. The court also fully instructed the jury as to the kind and character of evidence necessary under the law to corroborate the testimony of any accomplice.

The jury was clearly told that all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense or aid or abet in its commission, or have advised or encouraged its commission, are principals in the crime so committed and are accomplices. Under the circumstances here appearing this was sufficient to cover any aid or assistance, even such as might arise from any agreement which might be inferred. It may be noted that the theory of agreement or conspiracy did not directly appear from the evidence, and was first raised by these offered instructions. The responsibility of those entering into an agreement or conspiracy arises from the fact that they do some act which brings them within section 31 of the Penal Code, making them liable as principals. The essential thing here was what was done, and if there was any aid, assistance or encouragement through an agreement, this was an act within the scope of section 31, and was covered by the instructions here given. To tell the jurors that if they found an express or tacit agreement here they should, under certain circumstances, consider the witnesses as accomplices, would have added nothing, in practical effect, to the instructions that if they found that any acts of assistance or encouragement had been done, such a result followed. This is particularly true since any finding of an agreement here would necessarily rest upon inference

and since, in the case of Robinson, it must be based upon an inference based upon another inference. The jury was repeatedly told that if either of the witnesses rendered any aid or assistance or encouragement to the two parties who committed the act, the one so doing was an accomplice. This was equally true whether or not such aid or assistance was the result of an agreement with others. Under the circumstances here appearing, there was no prejudicial error in failing to use the words "conspirator" or "agreement." Moreover, it is inconceivable that the result here could have been affected by the giving of these instructions.

It is next contended that the court erred in certain instructions relating to accomplices which were given. The first is one stating that all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense or aid or abet in its commission, or not being present have advised and encouraged its commission, are accomplices of all other persons concerned in the commission of such crime. While it is admitted that this is correct as far as it goes, it is argued that it ignores the rule that conspirators are accomplices because they are principals. This instruction was offered by the appellant, no error appears, and the other element was elsewhere sufficiently covered. It is further argued that the element of conspiracy was eliminated from the consideration of the jury by an instruction which told the jury that the expression "to aid and abet" means being present, either actually or constructively, at the time and place of the offense and doing some act which renders aid to the perpetrator in the commission of the offense, and that, in other words, for one to be guilty of aiding or abetting another he would have to knowingly and with criminal intent actually aid, promote, encourage or instigate, by act or counsel, or by both act and counsel, the actual commission of the offense. Far from eliminating the element of conspiracy this told the jury that one was an accomplice if he aided or assisted the perpetrator of the crime in any way, even though it was only by counsel. This is broad enough to cover any such agreement as here appears. It is urged that another instruction, that an accomplice is a person who was present, either actually or constructively, and who rendered aid to the perpetrator in the commission of the offense, or advised and encouraged its commission, and that Robinson and Silvas were not accomplices, even though present at the time in question, unless it

was found that they participated in the act, or encouraged or aided the commission of the act, was prejudicial because it told the jury that in order to be accomplices either of these witnesses must have been actually or constructively present, or must have actually participated in the criminal act, or encouraged or aided the commission of the act. If they were aiding or encouraging the act they may be considered constructively present, but this is immaterial here as it was conceded that they were actually present, and the essential question was what they did or had done. They were not accomplices unless in some way they participated in the commission of the offense or encouraged or aided in its commission. None of these instructions took from the jury the consideration of any possible agreement or conspiracy, or prejudicially interfered with the consideration of the essential question as to whether either of these witnesses had said or done anything to aid or encourage the commission of the act.

A further consideration is that there was here some corroborative evidence which was not explained or denied by the appellant. It is well settled that such corroborative evidence need not, of itself, show the actual commission of the crime, that it may be slight under some circumstances, and that it need only tend to connect the defendant with the commission of the crime in question. If, from other evidence, the defendant's connection with the commission of the crime may be fairly inferred, the corroboration is sufficient (*People* v. *King,* 40 Cal.App.2d 137 [104 P.2d 521]). Testimony that the defendant had shown a pertinent photograph to the prosecutrix was held admissible in *People* v. *Bose,* 28 Cal.App. 743 [153 P. 965]. The court there quoted with approval from another case: " 'The testimony is admissible as corroborative of the main charge and as tending to show the disposition of the accused and his proneness to commit the crime of the particular nature involved.' " Pictures and similar evidence have been held admissible as corroborative in other cases. (*People* v. *Ah Leo,* 28 Cal.App. 164 [151 P. 748]; *People* v. *Knowles,* 75 Cal.App. 229 [242 P. 508]; *People* v. *Jensen,* 76 Cal.App. 558 [244 P. 1086]; *People* v. *Scott,* 24 Cal.App. 440 [141 P. 945]; *People* v. *Jordan,* 24 Cal.App.2d 39 [74 P.2d 519].) In the instant case, several witnesses testified that during the evening in question the appellant produced, talked about, and used in a most suggestive manner an extremely lewd article, which is better left undescribed. At the

trial, the sheriff testified that when he arrested the appellant in his living quarters in the Valley Rooms he found this article when the appellant opened a bureau drawer to get a shirt. The article was introduced in evidence and has been transmitted here. The less said about it the better, but to say the least it is much more forceful in showing "the disposition of the accused and his proneness to commit the crime of the particular nature involved" than would be any photograph or any set of pictures. It would certainly furnish as much corroboration as would burglar tools or abortion instruments found in possession of a defendant, which have been considered sufficient in other cases.

Also, several witnesses testified that at the party in question, while these persons were all assembled in the living room, the appellant told them that he had installed peep holes looking into various rooms in this rooming house; that when he rented a room to a man he made a practice of watching him through one of these holes; and that when he observed certain things which led him to believe that the opportunity was propitious he would enter the room, on the pretext of bringing towels or other articles, and would offer to satisfy the man. At the trial, the sheriff testified that at the time he arrested the appellant he found four such holes in the walls of certain of these rooms, affording such a view of the interior as would be most likely to facilitate such a purpose.

It is next contended that the appellant was improperly convicted on the second count because of the insufficiency of the information, coupled with an incomplete or erroneous instruction. The information charged the appellant with, on this occasion, inducing Silvas "to perform acts and to so live as would cause or manifestly tend to cause" him to come within the provisions of section 700 of the Welfare and Institutions Code. In this regard the court instructed the jurors that if they found that the appellant committed any act or omitted the performance of any duty which in their opinion would tend to cause or encourage Silvas to lead an idle, dissolute or immoral life a verdict of guilty on the second count must be returned. The information was somewhat deficient in that it alleged no particular acts. The respondent argues that it was sufficiently definite since it was alleged therein that this offense was connected in its commission with the charge set forth in the first count. Without going into this

matter further, the instruction in this connection left the jury free to convict on this count although the jurors may not have been in agreement with respect to the commission of any particular act or omission, as being calculated to cause or tend to cause the result in question. There is evidence here of a number of different acts which might be responsible for such a result, and there is nothing to show that some of the jurors did not base their verdict on some of these acts and other jurors on other acts. Under such circumstances, it can neither be held that error does not appear nor that it was not prejudicial. (*People* v. *Williams,* 133 Cal. 165 [65 P. 323]; *People* v. *Hatch,* 13 Cal.App. 521 [109 P. 1097]; *People* v. *Scofield,* 203 Cal. 703 [265 P. 914]; *People* v. *Campridon,* 204 Cal. 701 [268 P. 372].)

 Finally, it is argued that the court erred in refusing to give an instruction to the effect that members of the armed forces could be tried in the civil courts for crimes committed in this state, and that in passing on the credibility of any such person, while testifying as a witness, the jury might consider whether or not he had been granted immunity. Aside from another consideration, which need not be mentioned, there is also no evidence in the record of any grant or promise of immunity, or evidence of any other fact upon which such an instruction could properly be based. Neither error nor prejudice appears.

The judgment and order on the first count are affirmed. As to the second count, the judgment and order denying a new trial are reversed.

Marks, J., concurred.

A petition for a rehearing was denied July 22, 1946, and appellant's petition for a hearing by the Supreme Court was denied August 8, 1946. Schauer, J., voted for a hearing.