[No. 43612. En Banc. August 5, 1976.]

THE STATE OF WASHINGTON, *Respondent,* v. MILDRED L. ARNDT, *Petitioner.*

*Parker & Johnson,* by *Omar S. Parker,* for petitioner.

*Curtis M. Janhunen, Prosecuting Attorney,* and *David L. Edwards, Deputy,* for respondent.

HOROWITZ, J.—This case arises from a grand larceny conviction for fraudulent receipt of public assistance. The Court of Appeals affirmed the conviction. *State v. Arndt,* 12 Wn. App. 248, 529 P.2d 887 (1974). We affirm.

The defendant, having received public assistance for approximately 2½ years, was charged with violating RCW 74.08.331. A copy of the amended information is set out in the opinion of the Court of Appeals. RCW 74.08.331 provides in part:

> Any person who by means of a wilfully false statement, or representation, or impersonation, or a wilful failure to reveal any material fact, condition or circumstance affecting eligibility of need for assistance, including medical care, surplus commodities and food stamps, as required by law, or a wilful failure to promptly notify the county office in writing as required by law or [*sic*] any change in status in respect to resources, or income, or need, or family composition, money contribution and other support, from whatever source derived, or any other change in circumstances affecting his eligibility or need for assistance, or other fraudulent device, obtains, or attempts to obtain, or aids or abets any person to obtain any public assistance to which he is not entitled or greater public assistance than that to which he is justly entitled shall be guilty of grand larceny and upon conviction thereof shall be punished by imprisonment in the state penitentiary for not more than fifteen years.

The charge was made with respect to allegations that the defendant's husband had returned home, that he was employed, that she paid no rent for her house and that her son

who lived with her was employed and occasionally gave her money for food. The jury found the defendant guilty of grand larceny.

Defendant's primary contention is the trial court erroneously instructed the jury could find defendant guilty of one or more of the alternative means charged without a further requirement the jury agree unanimously as to the particular mode of commission. The jury was instructed, however, there must be a unanimous agreement defendant committed the crime of grand larceny as defined in RCW 74.08.331. In instructing the jury as to alternative means, the trial court used the language of the statute, stating that guilt could be based upon a finding defendant

> *either* made a false statement or representation of material facts, conditions or circumstances affecting her eligibility of [*sic*] need for assistance, *or* that the defendant failed to reveal any material facts, conditions or circumstances affecting her eligibility of [*sic*] need for assistance, *or* that the defendant failed to promptly notify the county office in writing as required by law of any change in status with respect to resources or income or money contributions from whatever source derived . . .

(Italics ours.)

■ The Court of Appeals rejected defendant's contention on the ground that when alternative means of committing a single crime are charged, and there is substantial evidence presented to support each of the alternative means, and the alternative means are not repugnant to one another, unanimity of the jury as to the mode of commission is not required. *State v. Stuhr*, 1 Wn.2d 521, 529, 96 P.2d 479 (1939); *State v. Talbott*, 199 Wash. 431, 437-38, 91 P.2d 1020 (1939); *State v. Medley*, 11 Wn. App. 491, 497, 524 P.2d 466 (1974) (rule approved but not applied). The Court of Appeals held: "RCW 74.08.331 does not list multiple crimes, but merely one crime, grand larceny, which can be committed various ways." *State v. Arndt, supra* at 252. Therefore, the court held, since the several means charged are not repugnant to one another, the trial court was not

required to instruct the jury to unanimously agree upon the particular mode or modes of commission.

We agree with the Court of Appeals that the resolution of this first issue requires a determination of whether RCW 74.08.331 describes (1) a single offense of grand larceny committable in more than one way, or (2) several separate and distinct offenses, each constituting grand larceny. As stated in *State v. Kosanke*, 23 Wn.2d 211, 213, 160 P.2d 541 (1945):

> [W]e must have in mind that there are two classes of criminal statutes to be considered. One class defines a specific crime, or makes a certain act or acts a felony or misdemeanor, or either, or both, and provides different ways in or means by which the crime may be committed, all in one statute, and the other class may set forth several distinct acts and make the commission of each a separate crime, all in one statute.

*Accord, State v. St. Clair*, 21 Wn.2d 407, 413-14, 151 P.2d 181 (1944); *State v. Adams*, 41 Wash. 552, 83 P. 1108 (1906).

If RCW 74.08.331 falls within the first category, it is unnecessary to a guilty verdict that there be more than unanimity concerning guilt as to the single crime charged, *i.e.*, grand larceny, regardless of unanimity as to the means by which the crime is committed provided there is substantial evidence to support each of the means charged. *State v. Talbott, supra; State v. Stuhr, supra; State v. Medley, supra; State v. Carothers*, 9 Wn. App. 691, 694, n.2, 514 P.2d 170 (1973); *State v. Metcalf*, 14 Wn. App. 232, 239, 540 P.2d 459 (1975). Cases from other states are generally to the same effect. *People v. Nye*, 63 Cal. 2d 166, 173, 403 P.2d 736, 45 Cal. Rptr. 328 (1965); *People v. Chavez*, 37 Cal. 2d 656, 670-72, 234 P.2d 632 (1951); *People v. Nor Woods*, 37 Cal. 2d 584, 586, 233 P.2d 897 (1951); *State v. Souhrada*, 122 Mont. 377, 385, 204 P.2d 792 (1949); *People v. Sullivan*, 173 N.Y. 122, 127-30, 65 N.E. 989 (1903); *State v. Flathers*, 57 S.D. 320, 321-24, 232 N.W. 51, 72 A.L.R. 150 (1930). On the other hand, if RCW 74.08.331 falls within the second category, and the statute describes more than one crime, there

must be a unanimous verdict as to each separate crime described. *See People v. Failla*, 64 Cal. 2d 560, 567-69, 414 P.2d 39, 51 Cal. Rptr. 103 (1966), citing *inter alia, People v. Scofield*, 203 Cal. 703, 709-11, 265 P. 914 (1928), and *People v. Dutra*, 75 Cal. App. 2d 311, 171 P.2d 41 (1946). *Also see People v. Thompson*, 144 Cal. App. 2d 854, 301 P.2d 313 (1956), also relying upon *Scofield* and *Dutra*.

There is a dictum in *State v. Golladay*, 78 Wn.2d 121, 137, 470 P.2d 191 (1970), that even when a single crime is charged, a conviction requires the jury agree upon one of the means charged.

> [T]he instructions must clearly distinguish the alternative theories and require the necessity for a unanimous verdict on either of the alternatives.

In *Golladay*, the defendant was charged with first-degree murder committed by three alternative methods—premeditation, felony-murder (rape) and felony-murder (larceny). The court found there was not sufficient evidence to establish the last method. A new trial was required, the court held, because the jury may have based its verdict on the felony-murder (larceny) method. There was, therefore, no need to discuss a situation where there is sufficient evidence to support each alternative means. However, since the dictum in *Golladay* has been relied on in several cases in which there was substantial evidence to support each means (*see, e.g., State v. Rogers*, 5 Wn. App. 347, 351-52, 486 P.2d 1125 (1971); *State v. Carothers*, 9 Wn. App. 691, 694, 514 P.2d 170 (1973)), we overrule the *Golladay* dictum insofar as it is inconsistent with this opinion.

■ How can it be determined if RCW 74.08.331 describes a single offense committable in more than one way, or describes multiple offenses? What must be ascertained is the legislature's intent—whether "the legislature therein intended to define but one crime, that of [grand] larceny, and to state the different ways in which the crime might be committed." *State v. Pettit*, 74 Wash. 510, 518, 133 P. 1014 (1913).

When the statute does not clearly answer this question

upon its face, and there is need for interpretation, several tests are available.

[I]n determining the question, there may be many factors that will aid the court, such as [1] the title of the act; [2] whether there is a readily perceivable connection between the various acts set forth; [3] whether the acts are consistent with and not repugnant to each other; [4] and whether the acts may inhere in the same transaction.

*State v. Kosanke,* 23 Wn.2d 211, 213, 160 P.2d 541 (1945). Let us examine each of these tests with respect to RCW 74.08.331.[1]

1. *The title of the act.* The title of RCW 74.08.331 as passed by the legislature (Laws of 1965, 1st Ex. Sess., ch. 34, p. 1762), states only the act relates to "public assistance," and is of no aid on this question. The heading and side annotation on the act, inserted by the code reviser pursuant to RCW 44.20.050, denominate the offense as "PUBLIC ASSISTANCE—FRAUD—PENALTIES" (heading) and as "Fraud in the procurement of public assistance . . . Penalties"' (side annotation). Although these particular legends purport to describe statutory content and are inserted by the code reviser after passage of the act pursuant to statute for convenience of reference, and therefore may have little if any value in determining legislative intent (*State ex rel. McGregor v. Rigg,* 260 Minn. 141, 146, 109 N.W.2d 310 (1961); *In re Chisholm's Will,* 176 N.C. 211, 213, 96 S.E. 1031 (1918)), we think the code reviser has correctly summarized the statute as involving the single crime of public assistance fraud contemplated by the legislature.

House and Senate Journal entries from 1965 do refer to

---

[1]Several of the following cases examined concern whether an information is duplicitous, *i.e.*, charges the commission of two separate crimes under one statute. These cases are helpful in resolving the question presented in the instant case; in each of those cases the court was required to determine whether a particular statute defined a single offense committable in several ways, or defined multiple offenses. A single crime committable in several ways remains such through verdict and judgment. It cannot be a single crime for purposes of the information, and then become multiple crimes for purposes of verdict and judgment.

RCW 74.08.331 as "setting forth crimes for fraudulently obtaining public assistance." House Journal, 39th Legislature (1965) at 235. However, it cannot be determined from such references standing alone whether the legislature intended each of the acts set forth disjunctively in RCW 74.08.331 to constitute the commission of a separate crime, or merely different means of committing the crime of fraudulently obtaining public assistance. For example, the title to Laws of 1913, ch. 28, § 1, p. 71 (RCW 26.20.030(1)(a)-(b)), refers to the "offenses" of family desertion or nonsupport of wife or children. Yet, this court held in *State v. Gipson*, 92 Wash. 646, 159 P. 792 (1916) (discussed below), after an examination of the nature of the acts punishable and the construction of the statute, that the statute sets out a single offense committable by several means.

2. *Whether there is a readily perceivable connection between the various acts set forth.* This test was used in *State v. Hennessy*, 114 Wash. 351, 356-57, 195 P. 211 (1921). The opinion states:

> The test . . . to determine whether . . . the statute defines more than one crime or whether it defines a single crime which may be committed in a number of different ways is whether there is a readily perceived connection between the things charged. . . .
>
> Applying this test to the present case, it appears . . . the crime defined by the statute[2] and of which

---

[2]"The statute (Laws of 1919, p. 518, ch. 174), upon which the information is based is as follows:

" '§ 1. Whoever shall

" '(1) Advocate, advise, teach or justify crime, sedition, violence, intimidation or injury as a means or way of effecting or resisting any industrial, economic, social or political change, or

" '(2) Print, publish, edit, issue or knowingly sell, circulate, distribute or display any book, pamphlet, paper, handbill, document, or written or printed matter of any form, advocating, advising, teaching or justifying crime, sedition, violence, intimidation or injury as a means or way of effecting or resisting any industrial, economic, social or political change, or

" '(3) Organize or help to organize, give aid to, be a member of or voluntarily assemble with any group of persons formed to advocate, advise or teach crime, sedition, violence, intimidation or injury as a

the appellant is charged was that of "effecting or resisting any industrial, economic, social or political change" in any of the ways specified in the act. It was not made criminal to do the things there mentioned for any other purpose. . . . [T]here is a direct and immediate connection between organizing, helping to organize, giving aid to and so forth, and voluntarily assembling which has a definite object to accomplish and the printing, publishing, circulating, and so forth, of books, pamphlets and other printed matter having for its object the same purpose. One is the organizing, the other the propaganda put forth and the result to be accomplished is the same, each having the common object as defined by the statute of effecting or resisting any industrial, economic, social or political change.

Applying the reasoning of *Hennessy* to RCW 74.08.331, it becomes clear that with each of the enumerated means "the result to be accomplished is the same, each having the common object as defined by the statute of" obtaining public assistance to which one is not entitled, and the statute defines a single crime which may be committed in a number of different ways. As stated in *State v. Walters*, 8 Wn. App. 706, 707-08, 508 P.2d 1390 (1973):

[T]he gravamen of the statutory crime is obtaining (or attempting to obtain, or aiding or abetting another to obtain) public assistance to which one is not entitled (or greater public assistance than that to which one is justly entitled) "by means of" one or more of the statutorily condemned devices: (1) willfully false statement (or representation or impersonation); or (2) willful failure to reveal any material fact, condition or circumstance, affecting eligibility or need, as required by law; or (3) willful failure to promptly notify the department as required by law of (A) any change in status in respect to resources, or income, or need, or family composition, etc., or (B) any other change in circumstances affecting eligibility or need for assistance; or (4) other fraudulent device.

Comparison may be made with *Seattle v. Molin*, 99

means or way of effecting or resisting any industrial, economic, social or political change,

" 'Shall be guilty of a felony.' " *State v. Hennessy,* 114 Wash. 351, 353-54, 195 P. 211 (1921).

Wash. 210, 213, 169 P. 318 (1917), in which the charge was worded in the terms of a Seattle ordinance (quoted in appellant's brief), which read:

Section 4. It shall be unlawful for any person, except as in this ordinance provided, to manufacture, sell, barter, exchange, give away, furnish or otherwise dispose of any intoxicating liquor; or to buy, receive or keep any intoxicating liquor with intent to sell, barter, exchange, give away, use, furnish, or otherwise dispose of the same; or to buy, accept or receive the same; or for any person, other than a licensed druggist or pharmacist or a person keeping alcohol to be used for mechanical or chemical purposes only, to have in his possession more than one-half gallon or two quarts of liquor other than beer, or more than twelve quarts or twenty-four pints of beer, for any purpose whatever; provided, however, that it shall not be unlawful for a person to give away intoxicating liquor to be drunk on the premises to a guest in his private dwelling or apartment which is not a place of public resort.

"The receiving, keeping, giving away or otherwise disposing of intoxicating liquor, except as in this ordinance provided, or any shift, device or subterfuge to evade the provisions of this ordinance, shall be deemed unlawful within the meaning of this ordinance."

The court held the complaint charged not one offense, but a number of disconnected, independent, and miscellaneous acts which could not constitute a single offense.

It does not allege different ways or means of committing the same offense, but charges a number of separate offenses arising out of a variety of independent acts. Can it be said that manufacturing liquor; selling, bartering and disposing of liquor; buying, receiving and keeping liquor for an unlawful purpose; buying liquor contrary to law and having a prohibited amount of liquor in one's possession, are but different ways of committing the same offense? If so, what is the offense which these miscellaneous acts constitute?

*Seattle v. Molin, supra* at 213. Unlike the ordinance in *Molin*, RCW 74.08.331 lists closely related, connected acts which constitute the single offense of fraudulently obtaining public assistance to which one is not entitled.

■ *3. Whether the acts are consistent with and not repugnant to each other.* In *State v. Pettit*, 74 Wash. 510, 518-19, 133 P. 1014 (1913), defendant was charged with the single crime of larceny by two of the ways specified in Rem. & Bal. Code, §§ 2601(2) and (3) (now RCW 9.54.010(2) and (3)). The court discussed how to determine whether or not the two means were repugnant.

> The varying ways by which a crime may be committed are not repugnant to each other unless the proof of one will disprove the other. The defendant here was charged with having committed the crime of larceny by color and aid of false pretenses, and also as bailee or trustee. The proof that the crime was committed by color and aid would not necessarily be inconsistent with proof that, under an agreement with the parties subsequently made, the defendant became a bailee or trustee. Neither would proof that tended to establish that the alleged crime had been committed by a bailee or trustee necessarily disprove a charge that the possession of the property had been originally obtained by color and aid of false or fraudulent pretenses.

It is clear that proof of any one of the three means specified in the instruction in question in the instant case (which used the language of RCW 74.08.331) does not disprove any other. There is no necessary inconsistency between obtaining public assistance by means of (1) a false statement or representation, (2) a failure to reveal material facts, conditions, or circumstances, and (3) a failure to promptly notify the county of any change in status with respect to resources or income.

*4. Whether the acts may inhere in the same transaction.* In *State v. Gipson*, 92 Wash. 646, 159 P. 792 (1916), the court was concerned with the question of whether Laws of 1913, ch. 28, § 1, p. 71 (RCW 26.20.030(1)(a)-(b)), which prohibits abandonment of a child. (.030(1)(a)), and failure to support a child (.030(1)(b)), sets out one offense committable by several means or two separate offenses. The court's holding relies on this fourth test.

> There is no inherent distinction between physical abandonment and desertion of a child or children and actual

failure to support, which, under the statute, constitutes abandonment or desertion. One might at the same time absent himself, thus physically abandoning and deserting his dependents, and also fail to support them. And he might, without physically absenting himself from his children, fail to support them. . . . We are, therefore, of the opinion that his Honor erred in his conclusion that two separate and distinct crimes had been charged . . .

*State v. Gipson, supra* at 649-50.

The reasoning in *Gipson* applies equally to the provisions of RCW 74.08.331. As stated in *State v. Walters*, 8 Wn. App. 706, 713, 508 P.2d 1390 (1973), criminal liability under RCW 74.08.331 follows when one obtains public assistance by means of:

(1) a willfully false statement, (2) a willful failure to reveal what is required by law to be revealed, (3) a wil'ful failure to promptly notify the department of those changes of which and in the manner the department is required by law to be notified, or (4) other fraudulent device.

The acts prohibited by (2) and (3) are not inherently different. Rather, they are almost indistinguishable. "The legis'ative intent as to the nature of the distinction [between a duty to reveal and a duty to notify], if any, is not readily discernible." *State v. Walters, supra* at 717. An example may be taken from the facts in the instant case. Defendant learned in June or September 1971 that the house in which she lived was rent free. Yet on two forms she filled out for public assistance after this discovery, she asserted that she was paying $65 per month rent. In addition, a welfare eligibility examiner testified that defendant never reported to the Division of Public Assistance that she paid no rent. Her act of filling out the forms without stating she was receiving free rent could be a violation of both (1) and (2), and her failure to otherwise notify the agency of this fact could be a violation of both (2) and (3).

 Our conclusion that RCW 74.08.331 defines a single crime is also consistent with two other rules of statutory interpretation.

1. Doubt should be resolved against turning a single transaction into a multiple offense.

Doubts in the construction of a penal statute will be resolved in favor of lenity and against a construction that would produce extremely harsh or incongruous results or impose punishments totally disproportionate to the gravity of the offense; so in case of ambiguity the construction will be against turning a single transaction into multiple offenses.

*Commonwealth v. Colonial Stores, Inc.*, 350 S.W.2d 465, 467 (Ky. 1961); *accord, Bell v. United States*, 349 U.S. 81, 83, 99 L. Ed. 905, 75 S. Ct. 620 (1955); *Prince v. United States*, 352 U.S. 322, 329, 1 L. Ed. 2d 370, 77 S. Ct. 403 (1957); *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 224, 97 L. Ed. 260, 73 S. Ct. 227 (1952) (statute makes certain "course of conduct" punishable as one offense, not as multiplicity of offenses, when acts arise from singleness of thought, purpose, or action); *Edwards v. United States*, 265 F.2d 302, 306 (9th Cir. 1959).

2. Penal statutes are generally construed against the state in favor of an accused. *Seattle v. Green*, 51 Wn.2d 871, 874, 322 P.2d 842 (1958); *State v. Thompson*, 38 Wn.2d 774, 779, 232 P.2d 87 (1951).

The consequences of treating RCW 74.08.331 as setting forth several separate crimes are harsh. For example, its violation by three of the separate means enumerated in the statute could mean three separate convictions of grand larceny, enough to render the defendant punishable as a habitual criminal and subject to life imprisonment. RCW 9.92.090.

██ Defendant also raises an issue relating to that part of the jury instruction which stated guilt would be shown upon a finding she "failed to reveal any material facts, conditions or circumstances affecting her eligibility of [*sic*] need for assistance." The defendant contends that the instruction is defective in that it failed to specify that the facts not revealed are facts required by law to be revealed, as provided in the statute. *State v. Walters, supra* at 713. The Court of Appeals refused to consider the issue which

was raised for the first time on appeal. CrR 6.15(c) requires an objection to an instruction be first raised before the trial court and that defendant's reasons for the objection be stated. Compliance with CrR 6.15(c) enables the trial court to correct any claimed error at the time it matters and helps avoid unnecessary appeals. In her petition defendant contends the error should nevertheless be considered because it constitutes a violation of a constitutional right. However, no specific constitutional violation is alleged and we know of none. *Compare State v. Peterson*, 73 Wn.2d 303, 306, 438 P.2d 183 (1968).

Examination of the record reveals the error claimed is not one of "obvious and manifest injustice," *State v. Louie*, 68 Wn.2d 304, 312, 413 P.2d 7 (1966), requiring review notwithstanding a failure to raise the issue below. The facts defendant "failed to reveal" were all items of income or resources—that her rent was free, her son was employed and occasionally gave her money, and that her husband had returned home and was earning money. These facts are clearly facts "required by law" to be revealed. RCW 74.04.300. That statute creates a debt owing the State in the amount of 125 percent of the amount of assistance improperly received from a public assistance recipient who willfully fails to reveal "resources or income." It is also clear that the jury was aware defendant was under a duty to reveal these facts. Mrs. Laura Click, a financial eligibility supervisor, testified without dispute that when a person applies for assistance "they are required to fill out a form that states all of their resources. This also includes such questions as . . . the resources, the income . . . ." The facts in *State v. Walters*, *supra*, were significantly different. There, the question was whether a defendant was required by law to report she had entered upon a meretricious relationship with another, which, the court was careful to point out, is not necessarily the same as a duty to report the receipt of resources or income. *State v. Walters*, *supra* at 715.

Since it was never disputed that the facts and circum-

stances defendant failed to reveal were required by law to be revealed, affecting as they did defendant's eligibility for public assistance, the lack of an instruction on the law's requirement here is not reversible error. *See State v. Fortune*, 196 Iowa 995, 996, 195 N.W. 740 (1923); *Tenino v. Hyde*, 138 Wash. 251, 253, 244 P. 550 (1926).

Affirmed.

STAFFORD, C.J., and ROSELLINI, HAMILTON, and WRIGHT, JJ., concur.

BRACHTENBACH, J. (dissenting)—This is a case where the majority holds that a person can be convicted of a crime without all jurors being convinced that the defendant did any of the criminal acts prohibited by statute.

Defendant was charged with committing grand larceny, in connection with receipt of public assistance, by means of:

1. A willfully false statement or representation; or

2. A willful failure to reveal any material facts, conditions or circumstances affecting eligibility; or

3. A willful failure to promptly notify the county office in writing as required by law of any change in status with respect to resources or income.

Under the majority holding, defendant could be convicted without 12 jurors agreeing that she did any one of the three separate acts charged. It is entirely possible that four jurors believed the defendant made false statements on public assistance forms but was not culpable for failing to reveal any material conditions or for failing to notify the county office of any change in income status. Four other jurors might believe she committed the second act charged, and four more jurors might believe she committed act number three. It is incomprehensible how a defendant can be convicted if 12 jurors are not required to agree that defendant committed one or more of the acts charged.

However, that is the precise result of the majority's holding.

The majority builds its case on faulty foundations. The majority relies upon the analysis of *State v. Kosanke*, 23 Wn.2d 211, 160 P.2d 541 (1945), to define the issue. The majority fails to disclose, however, that the court in *State v. Kosanke, supra*, was concerned with the issue of duplicity in an information. In fact, eight of the cases relied upon by the majority involve duplicity rather than a unanimity requirement in the verdict. Duplicitous charges are something quite different from requiring the jury to agree unanimously that the defendant committed a criminal act.

The issue, as perceived by the majority, is whether the statute described (1) a single offense of grand larceny committable in more than one way, or (2) several separate and distinct offenses, each constituting grand larceny. The difficulty with such an approach is that the true issue before the court is never squarely faced. The real issue is whether the jury was convinced unanimously that one or more of the charged acts was committed. The statutory crime of public assistance grand larceny simply does not exist unless the defendant commits one or more of the acts specified. The majority, however, holds that the defendant is guilty even though the jury does not agree that she committed any one of the acts charged.

If the statute described a single offense of grand larceny committable in more than one way, the majority states that "it is unnecessary to a guilty verdict that there be more than unanimity concerning guilt as to the single crime charged, *i.e.*, grand larceny, regardless of unanimity as to the means by which the crime is committed." Three Washington cases are relied upon to support this conclusion. *State v. Talbott*, 199 Wash. 431, 91 P.2d 1020 (1939); *State v. Stuhr*, 1 Wn.2d 521, 96 P.2d 479 (1939); *State v. Medley*, 11 Wn. App. 491, 524 P.2d 466 (1974). *State v. Talbott, supra*, involved a verdict of first-degree murder based upon alternative theories of guilt—felony murder or premedi-

tated murder. The only language applicable to the majority's opinion is found at pages 437-38:

The jury returned a verdict of murder in the first degree without specifying whether it related to the first or second counts, or to both. It is contended that the verdict is, therefore, void for uncertainty. We think there is no merit in this contention. The two counts do not charge different offenses, but merely charge the same offense in different ways, and the evidence in the case was amply sufficient to convict on either or both theories.

Such analysis is of little help in resolving the issue of whether the jury must be convinced unanimously that one or more of the charged acts was committed.

*State v. Stuhr, supra,* is even more remarkable than *State v. Talbott, supra,* for being totally devoid of analysis or reasoning. The court simply states at page 529 that "a finding that he committed either act established his guilt of the crime charged."

Of more assistance is *State v. Medley, supra.* The analysis in this opinion clearly supports the reasoning of this dissent. *State v. Medley, supra,* involved a "joy riding" conviction pursuant to RCW 9.54.020. The defendant urged as error the trial court's refusal to instruct the jury that it must agree unanimously as to whether the defendant actually stole the automobile or was merely riding in it with knowledge that it had been unlawfully taken. The Court of Appeals affirmed the conviction because under the statute there was no distinction between the guilt of the driver and that of the rider. The common denominator of either theory was the defendant's presence in the automobile with knowledge that it had been unlawfully taken. Thus, the defendant was guilty whether or not the jury was unanimous in their belief as to whether he was driving or riding. If he were driving, he necessarily was riding in the car.

The requirement of jury unanimity was therefore not compromised by the court in *State v. Medley, supra.* Not so in the present case. Whereas in *Medley,* proof of one act necessarily included proof of another, in the present case proof of one act does not include proof of any of the other

acts charged. If the jury is to find the defendant guilty, it must, at the very least, agree that the defendant did one of the acts charged.

The majority also refers to *State v. Metcalf*, 14 Wn. App. 232, 540 P.2d 459 (1975), to support its rule. The majority fails to note, however, that the court held that proof of one alternative act necessarily included the other alternative. Not so here.

Most of the cases relied upon by the majority from other jurisdictions involve a charge of murder. For example, in *People v. Chavez*, 37 Cal. 2d 656, 234 P.2d 632 (1951), the court held that it was unnecessary to have the jury agree that the murder was premeditated or done in the course of a felony so long as they were convinced that the defendant had committed murder as defined by statute. This is the extent of the analysis and reasoning to be found in these cases. In the murder cases, there is a specific act established, the killing. In the present case there is no crime unless and until the defendant is proved to have committed one or more of the acts prohibited by statute. In other words, there is no generalized crime of welfare fraud, it can be committed only in one of the specified methods.

More helpful is the rationale of *State v. Hazelett*, 8 Ore. App. 44, 47, 492 P.2d 501 (1972):

> In some cases it would be error to permit a jury to convict based on part of their number finding one set of facts to be true and part believing another set of facts to be true. For example, in *State v. Ewing*, 174 Or 487, 149 P2d 765 (1944), a sodomy prosecution in which the state's case included evidence of numerous acts of sodomy, the court said:
> "* * * We are of the opinion that error was committed in the failure of the court to require a specific election at some time prior to the final rebuttal argument of the prosecution and that the instructions of the court erroneously failed to impose the necessary limitations upon the jury and did, in fact, permit them to consider any of the alleged prohibited acts as being the act charged in the indictment. As a result, it is entirely possible that some of the jurors may have found the

defendant guilty of one of the prohibited acts, while others relied upon some other and different alleged act." 174 Or at 496.

This is not such a case. Here, there was only one act charged and proved—the act of taking the life of the victim. Whether this was done with premeditation or while attempting rape related to the defendant's mental state, and did not relate in any way to the act charged. Since the legal effect of committing the act is the same whether done with premeditation or while attempting rape, there is no reason to require the jury to unanimously agree on which of the two possible mental states, both equally culpable, defendant possessed at the time of the murder charged.

In support of its argument that the statute defines but a single crime, the majority relies on the title of the act under which defendant was charged to show legislative intent. The legislature, however, has nothing to do with the title of published law. The title is provided by the code reviser. More importantly, the bill, as introduced, contained no such reference. The bill was merely denominated as an act relating to public assistance, adding a new section to a specified chapter and providing penalties. House Bill No. 264 (1965). The most relevant inquiry must be into how the bill was construed by the legislature. The House Committee on Social Security and Public Assistance reported it as "House Bill No. 264, setting forth *crimes* for fraudulently obtaining public assistance . . ." (Italics mine.) House Journal, 39th Legislature (1965) at 235. Three more journal entries referred to the bill as setting forth *crimes*. House Journal, 39th Legislature (1965) at 314, 646, 1039. The Senate viewed it exactly the same, referring to it as a bill setting forth *crimes*. Senate Journal, 39th Legislature (1965) at 601, 996. It is similarly listed in the Journal index. House Journal, 39th Legislature (1965) at 2095; Senate Journal, 39th Legislature (1965) at 1723. In the code the statute is headed as "Unlawful *practices*." RCW 74.08.331. Under the majority's own reasoning, use of the plural instead of the singular implies the legislature intended to define several and distinct crimes. Further, if in

fact, the statute does describe separate crimes, the majority would hold that the jury must be unanimous in its decision as to each criminal act committed.

Such constrained logic only serves to emphasize the shortcomings of the majority's approach to the issue. Substantial and more persuasive authority exists contrary to the holdings of the majority. In *People v. Failla*, 64 Cal. 2d 560, 414 P.2d 39, 51 Cal. Rptr. 103 (1966), the court noted that California has several lines of cases depending upon the violation charged.

> [I]n a third line of decisions [citations omitted] the defendant has been prosecuted for violation of a statute under which any one of several different *acts* is sufficient to constitute the offense; in such circumstances the jurors must be instructed that in order to return a verdict of guilty they must all agree on at least one of the unlawful acts assertedly committed by the defendant.

(Footnote omitted.) *People v. Failla, supra* at 567-68. The court continues in *People v. Failla, supra* at 569:

> It follows that in prosecutions for burglary, as in murder and theft cases, the jurors need not be instructed that to return a verdict of guilty they must all agree on the specific "theory" of the entry—i.e., what particular felony or felonies the defendant intended at the time—provided they are told they must be unanimous in finding that a felonious entry took place.

Here there is no initial crime which can be proved. Conviction must rest entirely upon proof of the commission of one or more of the acts alleged.

In *People v. Scofield*, 203 Cal. 703, 265 P. 914 (1928), the defendant was charged with manslaughter by motor vehicle which could be committed in one of five ways. The court held it was error not to instruct the jury that they must be unanimous on at least one of the acts charged.

In *People v. Dutra*, 75 Cal. App. 2d 311, 322, 171 P.2d 41 (1946), the court stated:

> [T]he instruction in this connection left the jury free to convict on this count although the jurors may not have been in agreement with respect to the commission of any particular act or omission, as being calculated to cause or

tend to cause the result in question. There is evidence here of a number of different acts which might be responsible for such a result, and there is nothing to show that some of the jurors did not base their verdict on some of these acts and other jurors on other acts. Under such circumstances, it can neither be held that error does not appear nor that it was not prejudicial. [Citations omitted.]

*Accord, People v. Thompson,* 144 Cal. App. 2d 854, 301 P.2d 313 (App. Dep't Super. Ct. 1956); *State v. Washington,* 242 Mo. 401, 146 S.W. 1164 (1912); *State v. Oswald,* 306 S.W.2d 559 (Mo. 1957). This is precisely the situation presently before the court. "An accused is entitled to the concurrence of twelve jurors upon one definite charge of crime." *State v. Oswald, supra* at 563.

The jury should have been instructed that they must be unanimous in finding beyond a reasonable doubt that the defendant committed one or more of the acts charged. I would reverse and order a new trial.

HUNTER and UTTER, JJ., concur with BRACHTENBACH, J.