IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 30961-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHELLE LEE BLAIR, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, C.J. — Michelle Blair appeals her first degree robbery and first degree burglary convictions, and resulting persistent offender sentence, on two grounds. We conclude her arguments lack merit and affirm.

## FACTS

Ms. Blair and two others were charged with the noted offenses following an alleged home invasion attack on an acquaintance. The prosecution ultimately alleged that Ms. Blair and co-defendant Andrew Williamson were armed with deadly weapons—a knife and a baseball bat—during the incident.

After jury selection and pretrial motions, Ms. Blair asked to have new counsel appointed. She claimed that her counsel had lied to her about a plea agreement. Counsel explained that his client had given a "free talk" about a homicide case, but her

information had not been usable and the prosecutor would not offer her a plea deal. He agreed with his client that they did not communicate well and joined her request because he could understand how she had lost faith in him. He was, however, ready for trial. The trial court denied the motion.

Trial testimony established that Mr. Williamson and Ms. Blair robbed the victim in his house. Ms. Blair used a bat to prod the victim in the head and force him across a room. Mr. Williamson threatened to kill him with a large knife. The victim turned over his money and bank cards. When Ms. Blair was arrested, she was in possession of one of those stolen bank cards.

Ms. Blair defended on the theory that she had gone to the victim's house after her car broke down nearby. Mr. Williamson let her in to the house. Later an argument developed when Mr. Williamson demanded money that the victim allegedly owed Ms. Blair. Mr. Williamson used the knife to obtain some money from the victim.

The jury nonetheless convicted Ms. Blair as charged on both counts. By special verdict it found that she was not armed with a deadly weapon, but that her accomplice had been so armed during both offenses. The court imposed a mandatory sentence of life in prison after determining Ms. Blair was a persistent offender. She then timely appealed to this court.

ANALYSIS

This appeal presents claims that the trial court erred in denying the request to remove counsel and in failing to give a unanimity instruction regarding which deadly weapon was used to commit the crimes. Each claim will be addressed in turn.[1]

*Request for New Counsel*

Ms. Blair initially argues that the trial court erred in denying her request for new counsel. She contends that her relationship with counsel was broken and that her timely request should have been granted. The trial court did not err.

"Whenever a criminal cause has been set for trial, no lawyer shall be allowed to withdraw from said cause, except upon written consent of the court, for good and sufficient reason shown." CrR 3.1(e). If a criminal defendant is dissatisfied with appointed counsel, the defendant must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant. *State v. Stenson,* 132 Wn.2d 688, 734, 940 P.2d 1239 (1997) (*Stenson* I). This court reviews a denial of a request for new counsel for abuse of discretion. *Id.* at 733. Typically, discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker,*

---

[1] Ms. Blair also notes that the judgment and sentence erroneously indicates that she was convicted by guilty plea rather than by a jury verdict. The trial court is directed to correct that scrivener's error. We do not otherwise address the argument.

3

79 Wn.2d 12, 26, 482 P.2d 775 (1971). A reviewing court considers the following factors in deciding whether the trial court abused its discretion in denying a request to remove counsel: "(1) the extent of the conflict, (2) the adequacy of the inquiry, and (3) the timeliness of the motion." *In re Pers. Restraint of Stenson,* 142 Wn.2d 710, 724, 16 P.3d 1 (2001) (*Stenson* II).

The timeliness of a request to remove counsel is an important factor. A trial court does not abuse its discretion when it denies a motion to have new counsel assigned after jury selection has occurred. *State v. Shelton,* 71 Wn.2d 838, 839-40, 431 P.2d 201 (1967). In *Shelton,* the defendant argued that the court erred by denying his request after jury selection to have his counsel resign because he could not put his confidence in the defense counsel. *Id.* Because the defendant "gave no reason for his lack of confidence in his counsel; pointed to no area of disagreement between them; and failed to point out wherein counsel had in any way failed or refused to adequately advise or aid him" there was no abuse of discretion. *Id.* at 839. The court also noted that counsel had prepared for trial, and there was "no suggestion that counsel did not discharge his duty . . . in an efficient manner." *Id.* at 840.

The Washington Supreme Court has explicitly recognized that requests to have new counsel assigned on the eve of trial are untimely. In *Stenson* II, it stated that "'where the request for change of counsel comes during the trial, or on the eve of trial, the Court may, in the exercise of its sound discretion, refuse to delay the trial to obtain

4

new counsel and therefore may reject the request.'" *Stenson* II, 142 Wn.2d at 732

(quoting *United States v. Williams*, 594 F.2d 1258, 1260-61 (9th Cir. 1979)).

The trial court did not abuse its discretion in denying Ms. Blair's request to have

new counsel assigned on the day of trial because it was not timely. We also agree that

Ms. Blair did not make a showing that would have justified removal of counsel. Similar

to *Shelton*, Ms. Blair's counsel had stated that he was prepared for trial and defended the

case with his typical style. There was no actual breakdown in communications between

client and counsel. Ms. Blair was understandably disappointed that her "free talk" had

not resulted in a favorable plea offer from the prosecutor and may have thought counsel

expected a better outcome, but the evidence showed that the two were communicating

about the case. There simply was not the utter lack of interaction that is required to

justify replacing counsel.

For both reasons, the trial court did not err in rejecting the motion.

*Unanimity Instruction*

Ms. Blair also argues that the court erred in failing to require the jury to

unanimously identify which weapon was used during the incident. However, the jury

was not required to unanimously agree on which weapon the accomplice was armed with

at the time of the crime. Also, any error would have been harmless in light of the

verdicts.

Ms. Blair argues that the multiple weapons alleged to have been used during the incident were alternative means of committing the crime. She cites no specific authority for that proposition, and we are not aware of any such authority. Alternative means of committing a crime exist when the legislature, in defining a crime, creates alternative ways the offense can be committed. *E.g., State v. Arndt*, 87 Wn.2d 374, 378-86, 553 P.2d 1328 (1976). The legislature, however, has not defined the deadly weapon enhancement in terms of multiple ways of commission. There are many potential deadly weapons, but only one method of committing this enhancement—being "armed" with a deadly weapon. There was no need for a unanimity instruction on this topic.

Although that is sufficient to resolve the claim, we write further to clarify Ms. Blair's basic argument. She accurately quotes from a Division Two case that there is a "right to express jury unanimity on the means by which the defendant committed the crime when alternative means are alleged." *State v. Emery*, 161 Wn. App. 172, 198, 253 P.3d 413 (2011), *aff'd*, 174 Wn.2d 741, 278 P.3d 653 (2012). *Emery*, however, is incorrect on this point. *Emery* cites to *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994), which in fact discusses this issue in the context of evidentiary sufficiency. When there is insufficient evidence to support one of the means of committing an offense, *Ortega-Martinez* recognized that there must be a method of ensuring that the jury unanimously based its verdicts on means that were supported by the evidence. *Id.* at 707-08.

6

To the extent that *Emery* can be read in support of the proposition that unanimity must be assured in every alternative means case, it is incorrect. Although all jurors must agree that the crime has been committed, they are not required to be in agreement on the means by which the crime occurred. *See State v. Whitney*, 108 Wn.2d 506, 511-12, 739 P.2d 1150 (1987); *State v. Franco*, 96 Wn.2d 816, 822-24, 639 P.2d 1320 (1982); *Arndt*, 87 Wn.2d at 376-78. Instead, the concern for unanimity arises only when one of the means on which the jury was instructed is insufficient. At that point the conviction must be reversed unless there is a special verdict or other guarantee that all members of the jury returned the verdict on a basis supported by the evidence. *Franco*, 96 Wn.2d at 824.

As this is not an alternative means case, our discussion is at an end. However, even if Ms. Blair had established error in this regard, it would have been harmless because the convictions on the underlying offenses created her persistent offender status. The deadly weapon enhancements, even if erroneous, did not affect her sentence.

For the noted reason, the convictions and sentence are affirmed. The trial court is directed to correct the scrivener's error in the judgment form.

No. 30961-4-III
*State v. Blair*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, C.J.

WE CONCUR:

_____          _____
Brown, J.                                   Fearing, J.

8