# In the Iowa Supreme Court

No. 23–1928

Submitted December 18, 2024—Filed January 31, 2025

**Benjamin G. Trane,**

Appellant,

vs.

**State of Iowa,**

Appellee.

Appeal from the Iowa District Court for Lee (South) County, Michael Schilling, judge.

Benjamin Trane appeals the district court ruling denying several claims for postconviction relief and the State cross-appeals its ruling ordering a new trial on a child endangerment charge. **Affirmed on Appeal; Reversed on Cross-Appeal.**

Waterman, J., delivered the opinion of the court, in which all justices joined.

Alfredo Parrish of Parrish Kruidenier Dunn Gentry Brown Bergmann & Messamer L.L.P., Des Moines, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

**Waterman, Justice.**

In this postconviction-relief (PCR) appeal, we must decide whether the district court correctly resolved claims of ineffective assistance of trial counsel. Benjamin Trane established a private therapeutic boarding school for troubled youth that was shuttered after a police raid. The State charged Trane with: (1) sexual abuse of a minor, (2) sexual exploitation by a counselor or therapist, and (3) child endangerment. The first two counts involved the same underage female victim, and the third count involved two boys placed in separate isolation rooms at different times. A jury found him guilty on all three counts. We conditionally affirmed his convictions on his direct appeal while remanding the case for a hearing on a rape shield issue and preserving his ineffective-assistance-of-counsel claims for PCR proceedings. *State v. Trane* (*Trane I*), 934 N.W.2d 447, 449–50 (Iowa 2019). We later affirmed the district court's resolution of the rape shield issue in his direct appeal from the postremand ruling. *State v. Trane* (*Trane II*), 984 N.W.2d 429, 436–37 (Iowa 2023).

In this PCR action, Trane alleged his trial counsel was ineffective for failing to move to sever the child endangerment count for a separate trial and for failing to object to the marshaling instruction on that count. The district court rejected the severance claim, finding trial counsel's testimony credible that Trane, who had already rejected his lawyer's advice to waive his speedy trial rights, made an informed decision to forego a motion for severance to avoid a delay. But the district court ordered a new trial on the child endangerment count. The court found that Trane's trial counsel breached her duty by failing to object to the marshaling instruction that used "and/or" language for two victims on each element, allowing a nonunanimous verdict and thereby prejudicing Trane. He

appealed and the State cross-appealed their respective adverse rulings. We retained the case.

On our de novo review, we affirm the first ruling and reverse the second. Giving weight to the district court's credibility findings, we find that Trane, eager to avoid delay, chose to forego a motion to sever the child endangerment count. We also agree with the district court's determination that trial counsel breached her duty by failing to object to the erroneous marshaling instruction on child endangerment. "And/or" language in that instruction could allow the jury to return a guilty verdict without unanimity as to one or both victims. But we find no prejudice because both child victims were similarly situated and there is no reasonable probability jurors did not find him guilty of endangering both children.

## I. Background Facts and Proceedings.

We discussed the facts underlying his criminal convictions at length in our first opinion, *Trane I*, 934 N.W.2d at 450–55. We truncate our discussion of the facts to those necessary for context and resolution of Trane's PCR claims.

**A. The Criminal Charges Against Trane.** In 2002, Trane and his wife moved from Utah to Iowa to open a boarding school in Keokuk called Midwest Academy. Its purpose was to treat and rehabilitate troubled youth. "Trane was the owner and the de facto director of the school." *Id.* at 456. In 2015, the Iowa Department of Human Services (DHS)[1] and the Federal Bureau of Investigation began investigating allegations that Trane's methods of discipline had endangered the lives of several students, including two boys, A.H. and B.V.

---

[1]The Iowa Department of Human Services was later merged with the Iowa Department of Public Health and renamed the Iowa Department of Health and Human Services. For the purposes of this opinion, we refer to the agency by its name at the time of Trane's criminal trial.

Relevant to the child endangerment charge was the use of Out-of-School Suspension (OSS) rooms. OSS rooms were designed for a single student to occupy for up to twenty-four hours at a time, with constant supervision. The OSS rooms were employed as a "last ditch effort" to curb undesirable behaviors; for instance, constant distractions in the classroom or physical attacks on an instructor would land a student in OSS. While in OSS, the student was expected to sit in structure except for bedtime, meaning he or she could choose from one of three positions in which to sit without moving. The lights in the OSS room were always on. Should the student break structure without permission or otherwise act out, the twenty-four-hour clock would reset.

A.H. and B.V. were each confined in an OSS room for significant periods of time. A.H. arrived at Midwest Academy in May 2014 when he was twelve years old. A.H. had been diagnosed with anxiety, depression, and oppositional defiant disorder, and had been unsuccessfully treated at a psychiatric hospital. A.H.'s psychiatrist recommended Midwest Academy to A.H.'s parents. At Midwest Academy, A.H. continued his pattern of defiance, and as a result, he spent approximately half of his time in OSS. While in OSS, A.H. engaged in behavior such as urinating on the walls, punching his own nose to make it bleed, and throwing his chewed-up food at the surveillance camera. When A.H.'s parents removed him from Midwest Academy after approximately a year, A.H.'s weight had declined from 120 to 90 pounds.

B.V. was admitted to Midwest Academy a few months after A.H., when he too was twelve years old. B.V. came to the school with a diagnosis of attention deficit hyperactivity disorder and bipolar disorder, as well as a past history of assaultive behavior. While at Midwest Academy, B.V. spent at least 133 of his 210 days in OSS—sixty-three percent of his time at Midwest Academy. While in OSS, B.V. defecated and urinated in the room and often refused to eat. By the time B.V. left Midwest Academy in March 2015, his weight had gone down from 115 pounds to 89 pounds.

*Id.* at 450–51 (footnote omitted).

Separately, a female student (K.S.) accused Trane of sexually assaulting her while she lived at the school.

In late 2015, K.S. disclosed to a night-time staff member named Cheyenne Jerred that Trane had been sexually abusing her, and Jerred reported the allegations to DHS. K.S.'s disclosure to Jerred apparently came the day after Trane delivered to K.S. the

ill-received news that she would not be permitted to travel off campus with anyone for Thanksgiving. The allegations were later investigated by DCI.

Over the course of several interviews with DCI, K.S. disclosed the following incidents of sexual contact with Trane: (1) Trane pulled K.S.'s pants down enough to expose her underwear under the guise of looking for and photographing distinctive birthmarks for the Child Protection Center (CPC); (2) after lights out, Trane knelt next to K.S.'s bed while she faced away from him and slid his hand under the covers, under her shorts, and into her vagina; (3) Trane placed K.S.'s hand over the groin area of his pants while he developed an erection; (4) Trane unbuttoned K.S.'s uniform pants and put his finger into her vagina while she visited his home with other students; (5) Trane videotaped himself engaging in sexual intercourse with K.S. and ordered K.S. to clean the floor where the act occurred so that K.S. would be permitted to call her sister; (6) Trane had sexual intercourse with K.S. on at least one other occasion; (7) Trane had K.S. perform an act of oral sex on him; (8) Trane had K.S. perform a manual masturbatory act on him while he guided her hands with his; and (9) Trane moved his groin against K.S. while laying fully clothed on top of K.S.

*Id.* at 451–52 (footnotes omitted).

In 2016, "law enforcement executed a search warrant at Midwest Academy, interviewed every student enrolled, shut down the facility, and sent all of the children home." *Id.* at 452. Subsequent searches generated "a vast amount of paper and electronic evidence" that took over a year to digitize into files with five to six terabytes of data. *Id.*

**B. Original Criminal Proceedings.** On September 18, 2017, the State charged Trane by trial information with one count of sexual abuse in the third degree, one count of sexual exploitation by a counselor or therapist, and one count of child endangerment. The first two counts involved K.S., while the third count arose from locking A.H. and B.V. in separate small OSS rooms. "Trane pled not guilty and asserted his right to a speedy trial, which was then set for December 12." *Id.*

Before trial, Trane's court-appointed counsel conferred with him about possibly waiving his speedy trial rights and severing the charges into two trials: one for the charges concerning sexual abuse of K.S. and another for child endangerment. According to his trial counsel, Trane showed no interest in either of these options because it would slow down the process and he wanted to "be home by Christmas." Trane's wife and children resided in another state and he was not allowed to leave Iowa under the terms of his pretrial release.

Because Trane declined to waive his speedy trial rights, the discovery process was rushed.

> K.S., who now resided out of state, was deposed on December 11, the afternoon before trial was to begin. In her deposition, she testified that she had previously made allegations of sexual abuse against her foster parents and her adoptive parents. Upon conferring with K.S.'s adoptive mother following the deposition, Trane's counsel filed a rule 5.412 motion that evening. The motion asserted that K.S. had made prior false allegations of sexual abuse against both sets of parents and sought to "introduce testimony through both cross-examination and through the complaining witness' adoptive mother as to the falsity of those allegations." The motion elaborated that "prior false allegations are not considered 'prior sexual behavior' and therefore do not fall within the protections of Rule 5.412." The motion was time-stamped 5:39 p.m. on December 11.
>
> The State resisted Trane's motion. The State maintained that the motion was untimely, since it was being filed on the eve of trial. See Iowa R. Evid. 5.412(*c*)(1)(A) (generally requiring motions based on an exception to rule 5.412 to be filed at least fourteen days before trial). The State further maintained that the motion was deficient because it was not accompanied by an offer of proof. Lastly, the State urged that the motion should be denied on the merits because "K.S. has never recanted her prior abuse allegations."

*Id.* at 453 (footnote omitted). "The district court denied Trane's motion. It concluded that the motion was untimely." *Id.* at 454.

Trane's criminal jury trial commenced the next day. "K.S. and B.V. (but not A.H.) testified for the State." *Id.* A.H.'s mother also testified for the State. A

forensic psychologist provided expert testimony for the State on the sexual abuse counts. Trane and his wife testified for the defense. Both the State and the defense called other former students and staff as witnesses. The district court's marshaling instruction for child endangerment, Jury Instruction No. 31, as we noted in *Trane I*, "did not require the jury to agree that a specific child—either A.H. or B.V.—had been endangered." *Id.* The instruction stated:

> Under Count III of the Trial Information, the State must prove all of the following elements of Child Endangerment:
>
> 1. On or between September 18, 2014, and January 31, 2016[,] the defendant was the person having custody or control of [B.V.] *and/or* [A.H.]
>
> 2. [B.V.] *and/or* [A.H.] were under the age of fourteen years.
>
> 3. The defendant knowingly acted in a manner that he was creating a substantial risk to [B.V.] *and/or* [A.H.]'s physical or mental or emotional health or safety.
>
> If the State has proved all of the elements, the defendant is guilty of Child Endangerment. If the State has failed to prove any one of the elements, the defendant is not guilty of Child Endangerment.

*Id.* (alterations in original). Trane did not object to this instruction at trial or offer a different proposed marshaling instruction. Trane conceded elements one and two during closing arguments and instead argued that element three had not been proven. Jury Instruction No. 33, defining "substantial risk," also used "and/or" language referring to B.V. and A.H. Again, Trane's trial counsel neither objected to this instruction nor offered a different proposed instruction on the substantial risk element.

The jury returned guilty verdicts. On count I, involving K.S., it found Trane guilty of the lesser included offense of assault with intent to commit sexual abuse; on count II, also involving K.S., it found him guilty of a pattern, practice, or scheme to engage in sexual exploitation by a counselor or therapist. "Finally,

on count III, involving B.V. 'and/or' A.H., the jury found Trane guilty of child endangerment." *Id.* Before sentencing, Trane retained new counsel and moved for a new trial on multiple grounds, including ineffective assistance of trial counsel. The district court denied his motion. The court imposed consecutive sentences of two years on the assault charge, five years on the sexual exploitation charge, and two years for child endangerment, for an indeterminate sentence of up to nine years in prison.

Trane appealed, arguing that there was insufficient evidence to support his conviction, that the district court erred by failing to hold a rule 5.412 hearing, and that his conviction should be reversed because his trial counsel provided ineffective assistance. We retained the case.

We held that sufficient evidence supported Trane's convictions. *Id.* at 456. We also held that the district court erred by failing to hold a rule 5.412 hearing upon Trane's request, and we remanded for that hearing to occur. *Id.* at 463. We instructed that "[i]f the district court finds after such a hearing that Trane has made the required showing by a preponderance of the evidence, 'then a new trial shall be granted.'" *Id.* (quoting *State v. Alberts*, 722 N.W.2d 402, 412 (Iowa 2006)). We declined to reach his ineffective-assistance-of-counsel claims, which we preserved for PCR proceedings:

> "We normally preserve ineffective-assistance-of-counsel claims for postconviction-relief proceedings." For a couple of reasons, we think that is the prudent course here. This will give Trane's trial counsel a full opportunity to explain her actions. In addition, it will facilitate consideration of "the cumulative effect of the prejudice arising from all the claims."

*Id.* at 465 (citation omitted) (first quoting *State v. Brown*, 930 N.W.2d 840, 844 (Iowa 2019); and then quoting *State v. Clay*, 824 N.W.2d 488, 501 (Iowa 2012)).

In *Trane I*, we foreshadowed the two claims for PCR not at issue arising from Trane's trial counsel's failure to move for severance and her failure to object to the marshaling instruction on child endangerment:

> Ordinarily one might have expected a motion for severance in a case like this. The sexual abuse and sexual exploitation charges involved a different kind of misconduct, carried out in a different way, against a different victim than the child endangerment charge. But Trane's trial counsel should get a chance to explain why she did not move for severance. Indeed, Trane's present counsel wanted to go into this subject during the new trial hearing and was not allowed to do so. *See* Trial Tr. 115 ("I also would have wanted to know why she didn't ask for severance in this case."). It is possible that, as with the decision to insist on a speedy trial, this was a client call.
>
> . . . .
>
> Lastly, from our vantage point, we have concerns about the "and/or" marshaling instruction on child endangerment. We think an identifiable victim—i.e., "a child"—is an element of the offense. *See* Iowa Code § 726.6(1). The instruction here could have allowed the jury to find that the defendant had custody or control of B.V. while knowingly acting in a manner that created a substantial risk to A.H.'s physical, mental or emotional health or safety. Or it could have allowed different jurors to reach a guilty verdict as to different victims. As Trane's present counsel pointed out below, the idea for this instruction appears to have originated with the State. Its proposed instructions used the terminology "[B.V.] or [A.H.]." The district court changed this to "[B.V.] and/or [A.H.]"

*Id.* at 465–66 (alterations in original) (footnote omitted).

**C. Rule 5.412 Hearing and Remand Proceedings.** In *Trane II*, we addressed the postremand proceedings in the criminal case:

> Soon after, the district court held the mandated rule 5.412 hearing. K.S.'s adoptive parents both testified. Both denied any physical or sexual abuse. K.S. also testified. She described physical and sexual abuse by her adoptive father. Also, Trane offered a transcript of K.S.'s deposition. In it, K.S. described physical abuse by both adoptive parents as well as sexual abuse by her adoptive father.
>
> In a written ruling, the court concluded that "[b]ased on the totality of the evidence, the court d[id] not find that, by a

preponderance of the evidence, K.S. made false allegations of sexual abuse against her adoptive parents or the foster parents." So the court declined to grant a new trial.

984 N.W.2d at 433 (alterations in original).

Trane appealed the district court's ruling, and we retained the case. *Id.* This time, "He argue[d] the district court abused its discretion by denying his motion for recusal, by considering certain evidence, and by concluding that Trane failed to prove K.S. made false allegations of sexual abuse." *Id.* at 432. We affirmed the district court's ruling. *Id.* at 437.

**D. PCR Proceedings.** Trane brought this PCR action. He alleged that his trial counsel was ineffective for failing to move for severance and for failing to object to the marshaling instruction on child endangerment.[2] The parties submitted the case on a stipulated record that included deposition testimony by Trane and his trial counsel. Neither Trane nor his trial counsel testified live in the PCR proceedings. The judge who presided over the criminal jury trial had retired, and a different district court judge adjudicated the PCR claims.

Trane testified that his trial counsel never talked with him about severing his charges and that he would have chosen to sever the charges if the option was presented. Trane points out that there is no evidence his trial counsel researched the issue of severance, made notes regarding the issue, or drafted a motion for severance. Yet his trial counsel documented many other discussions she had with Trane, including his refusal to waive his speedy trial rights.

Trane's trial counsel testified that she discussed a severance with Trane and advised him that a severance would result in separate trials a month apart.

---

[2]Trane also argued in his PCR petition that his trial counsel was ineffective by (1) failing to object to improper vouching by one of the state's witnesses, (2) failing to object to prejudicial hearsay evidence, and (3) failing to call two potentially exculpatory witnesses. The PCR court rejected these arguments, and Trane does not challenge those rulings on appeal.

She testified that Trane chose to forego a severance, explaining that "[h]e was very clear and emphatic from the very beginning he wanted this done. He wanted it done quickly. He intended to be home by Christmas, and anything that was going to delay the process, he really wasn't interested in." When asked why she had no documentation indicating any research regarding severance, Trane's trial counsel responded, "I probably would not have researched the issue of severance because I would have been familiar with the rules." And her file contained no draft motion for severance because Trane had told her not to pursue a severance.

The district court held that Trane's rights were not violated by his trial counsel's failure to move to sever his charges. The court found credible Trane's trial counsel's testimony that she discussed the issue of severance with Trane "early on" and that he shut down the idea. The court found that "Trane's statements denying that his counsel had a discussion with him about severance are self-serving" and not credible. The court determined that the failure to sever the charges stemmed from a decision made by Trane after the advice of counsel and, therefore, could not support a claim for ineffective assistance of counsel. The court found the lack of documentation in trial counsel's file resulted from her client's decision not to pursue a severance.

Trane's trial counsel testified that she was not involved in drafting the jury instructions and did not submit proposed instructions to the court. However, she opined that the language of the marshaling instruction for child endangerment was not objectionable. The district court disagreed, stating, "[B]ecause of the way the jury instruction is worded, different jurors could reach guilty verdicts based upon different victims, and there would not have to be a unanimous verdict by all jurors as to *one* victim." The court determined that Trane's trial "counsel breached an essential duty by failing to object to jury

Instruction number 31 . . . and that [Trane] was prejudiced by that breach." The court concluded that the evidence of Trane's guilt as to both victims was not overwhelming and determined "that Trane has demonstrated a reasonable probability that, but for counsel's failure to object to the flawed Instruction No. 31, the result of the proceeding would have been different." Accordingly, the court ordered a new trial on the child endangerment charge.

Trane appealed the district court's denial of his claim that his trial counsel was ineffective for failing to move for severance. The State cross-appealed the district court's ruling granting a new trial on the charge of child endangerment. We retained the case.

## II. Standard of Review.

We review de novo PCR claims of ineffective assistance of counsel. *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). "On de novo review, 'we give weight to the lower court's findings concerning witness credibility.' " *Id.* (quoting *King v. State*, 797 N.W.2d 565, 571 (Iowa 2011)). "But we are not bound by the lower court's determination." *Id.*

## III. Analysis.

"The constitutions of the United States and Iowa guarantee a criminal defendant the right to effective assistance of counsel." *State v. Davis*, 951 N.W.2d 8, 16 (Iowa 2020) (quoting *State v. Kuhse*, 937 N.W.2d 622, 628 (Iowa 2020)). "A defendant proves ineffective assistance of counsel when he establishes: '(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *Id.* (quoting *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006), *superseded in part on other grounds by statute*, 2019 Iowa Acts ch. 140, § 31, (codified at Iowa Code § 814.7 (2020)), *as recognized in State v. Hanes*, 981 N.W.2d 454 (2022)).

**A. Trial Counsel's Failure to Move for Severance.** In *Trane I*, we stated, "Ordinarily one might have expected a motion for severance in a case like this." 934 N.W.2d at 465. But we also noted, "It is possible that, as with the decision to insist on a speedy trial, this was a client call." *Id.* That is what the PCR record establishes. Although Trane testified his trial counsel never discussed a severance with him and he would have pursued a severance had she mentioned it, his trial counsel testified to the contrary. The State argues, and the district court found, that Trane made the call to forego a motion for severance.

Trane has the burden to prove "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This requires "proving that his counsel 'performed below the standard demanded of a reasonably competent attorney.' " *Davis*, 951 N.W.2d at 16 (quoting *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001) (en banc)). "We presume counsel performed competently unless the claimant proves otherwise by a preponderance of the evidence." *State v. Doolin*, 942 N.W.2d 500, 507 (Iowa 2020).

Attorneys are generally required to honor their clients' decisions and instructions throughout the litigation. *See* Iowa R. Prof'l Conduct 31:1.2(a) ("[A] lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by rule 32:1.4, shall consult with the client as to the means by which they are to be pursued."). If Trane was advised about the option of filing a motion for severance, and made the informed decision to forego that option, he cannot obtain relief now on an ineffective-assistance-of-counsel claim.

The district court found that Trane's trial counsel did, in fact, discuss a severance with him, but he chose to forego a motion for severance. The district

court "conclude[d] that trial counsel's sworn statements explaining that she discussed filing a Motion for Severance of Count III with Trane are more credible than Trane's . . . sworn statements to the contrary."

On our de novo review, we agree with the district court's finding. Trane's trial counsel testified at length in her deposition about an early conversation she held with Trane regarding severance:

> I knew if we were going to do a motion to sever, it would need to be done fairly quickly, and I remember talking to him about that.
>
> I remember him asking me, "Well, what would that mean?", and me explaining the process, and if I remember correctly, at this time it was when we were still -- in our district were still choosing juries for a monthlong service, so I had explained to him generally the courts will address the more -- if we were to sever it and the Court would -- do the motion to sever and the Court were to sever it, that in our district we generally will handle the more serious case first, and then once that is done, then when we have an entirely new jury panel, which in this case would have been after the first of the year, then we would address the second round of cases, the child endangerment.
>
> He was very clear and emphatic from the very beginning he wanted this done. He wanted it done quickly. He intended to be home by Christmas, and anything that was going to delay the process, he really wasn't interested in.

Trane's trial counsel provided consistent testimony by affidavit:

> I do not recall many specifics about [m]y representation of Mr. Trane as it has been over five year[s] ago. I do recall that he was adamant that the case would be concluded so that he would be home with his children by Christmas. This was always his response when I would discuss anything with him that could potentially delay his trial date in December 2017. This includes a discussion about severing the child endangerment counts from the sexual abuse counts. I believe it was early in the case when I remember explaining to him that it would result in two trials, one likely after the other and that it would be at least a month after the first trial, that the second one would be held, so there would be a different jury pool. He waved me off and made it clear that he wanted the matter done with as quickly as possible and that he "would be home by Christmas."

Like the district court, we find trial counsel's testimony persuasive on this issue. Trane wanted the case over as quickly as possible, before Christmas, so he could join his wife and children out of state. Importantly, he rejected his trial counsel's advice to waive his speedy trial rights. We find that Trane's trial counsel discussed severance with him, and he made an informed decision to forego a motion for severance.

The better practice for trial counsel would have been to memorialize Trane's decision on severance in writing, as she did for Trane's decision not to waive speedy trial rights. But we credit trial counsel's testimony despite her lack of a draft motion for severance or research notes on that issue. Why research and draft a motion the client told you not to file? And we credit trial counsel's testimony that "I probably would not have researched the issue of severance because I would have been familiar with the rules."

Because Trane made an informed decision to not seek a severance, we affirm the district court ruling rejecting his ineffective-assistance-of-counsel claim on this issue.

**B. Trial Counsel's Failure to Object to the Marshaling Instruction on Child Endangerment.** Next, we must determine whether the district court correctly ordered a new trial on the charge of child endangerment based on trial counsel's failure to object to the marshaling instruction. Trane had the burden to prove "both deficiency (failure to perform an essential duty, that is, breach) and prejudice." *Davis*, 951 N.W.2d at 16. "[T]he failure to recognize an erroneous instruction and preserve error breaches an essential duty." *Id.* (quoting *State v. Ondayog*, 722 N.W.2d 778, 785 (Iowa 2006)). When that occurs, we must determine "whether there was a tactical reason for not objecting to the

instruction." *Id.* (quoting *Ondayog,* 722 N.W.2d at 785). If there was a reasonable tactical reason for not objecting to the instruction, then the attorney has not acted deficiently. *Ondayog,* 722 N.W.2d at 786. We find Trane's trial counsel had no tactical reason to refrain from objecting to an erroneous marshaling instruction here.

"The marshaling instruction is the crown jewel of the court's instructions in a criminal case." *Davis,* 951 N.W.2d at 20 (quoting *Kuhse,* 937 N.W.2d at 633 (Appel, J., concurring specially)). The State argues that the instruction was not erroneous, and defense counsel had no duty to make a meritless objection. As noted, Trane was charged with one count of child endangerment against two victims. The marshaling instruction for that charge erred by using "and/or" references to the victims for each element of the offense. We repeat the instruction in full:

> Under Count III of the Trial Information, the State must prove all of the following elements of Child Endangerment:
>
> 1. On or between September 18, 2014, and January 31, 2016[,] the defendant was the person having custody or control of [B.V.] *and/or* [A.H.]
>
> 2. [B.V.] *and/or* [A.H.] were under the age of fourteen years.
>
> 3. The defendant knowingly acted in a manner that he was creating a substantial risk to [B.V.] *and/or* [A.H.]'s physical or mental or emotional health or safety.
>
> If the State has proved all of the elements, the defendant is guilty of Child Endangerment. If the State has failed to prove any one of the elements, the defendant is not guilty of Child Endangerment.

(Emphases added.) Neither the State nor Trane's trial counsel objected to this instruction. The "and/or" language was not in the State's proposed marshaling instruction. Nor is "and/or" language found in The Iowa State Bar Association's

(ISBA) uniform criminal jury instruction on child endangerment, which addresses a single victim per charge.[3] Trane's trial counsel did not offer a proposed instruction.

The district court in this PCR proceeding correctly concluded that Jury Instruction No. 31 was erroneous. The district court reasoned:

> In this case, because of the way the jury instruction is worded, different jurors could reach guilty verdicts based upon different victims, and there would not have to be a unanimous verdict by all jurors as to *one* victim. Such is contrary to the clear meaning of the charging statute, § 726.6(1)(*a*). Under that statute, an individual child is key. The Court could not find Iowa cases discussing the propriety of the "and/or" type of instruction in the case of alleged multiple victims, but there are many cases from other jurisdictions.

We agree with the district court's conclusion that the marshaling instruction misstated Iowa law by permitting a nonunanimous verdict. For example, the instruction would have allowed only six jurors to find that Trane endangered A.H. but not B.V., while the other six found him guilty of endangering B.V. but

---

[3]The ISBA's uniform marshaling instruction on child endangerment provides:

> 1. On or about the _____ day of _____, 20___, the defendant was the [{parent} {guardian} {person having custody or control} of (name) {or a member of the household in which (name) resided}].
>
> 2. (Name) was [under the age of fourteen years] [a mentally or physically handicapped minor under the age of eighteen].
>
> 3. The defendant acted with knowledge that [he] [she] was creating a substantial risk to (name)'s [physical] [mental] [emotional] health or safety.
>
> 4. The defendant's act resulted in serious injury to (name).*
>
> If the State has proved all of the elements, the defendant is guilty of Child Endangerment. If the State has failed to prove any one of the elements, the defendant is not guilty of Child Endangerment (and you will then consider the crime of _____ explained in Instruction No._____).

Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 2610.1 (2022). Element four from the model instruction is included only when the state charges a class "C" felony or above. It was omitted in Trane's case because he was charged with an aggravated misdemeanor.

> Parties and trial courts should consult the uniform instructions. *See State v. Becker*, 818 N.W.2d 135, 143 (Iowa 2012), *overruled in part on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016).

not A.H. Thus, the "and/or" language for each element permitted a guilty verdict that was not unanimous as to either victim.

Unanimous jury verdicts are "fundamental to the American scheme of justice." *Ramos v. Louisiana,* 590 U.S. 83, 93 (2020) (quoting *Duncan v. Louisiana,* 391 U.S. 145, 149 (1968)). Allowing instructions like the one at issue here would undermine that bedrock principle. Iowa law requires a unanimous jury verdict in criminal cases. *See* Iowa R. Crim. P. 2.22(1) ("For each count submitted in the jury instructions, the jury must render a unanimous verdict . . . ."). "[W]e presume juries follow the court's instructions." *Kinseth v. Weil-McLain,* 913 N.W.2d 55, 78 (Iowa 2018). Jury instructions that allow nonunanimous verdicts are erroneous and should not be given.

The State relies heavily on *State v. Duncan* to argue that the marshaling instruction was not objectionable. *See* 312 N.W.2d 519 (Iowa 1981). In *Duncan,* the state alleged that the defendant committed a single burglary by either breaking or entering a boat or by breaking or entering the marina where the boat was docked. *Id.* at 520–21. The jury was instructed as follows:

> 1. That on or about the 2nd day of September, 1979, in Scott County, Iowa, the defendant either broke or entered or remained in at a time when the same was closed to the public, a boat owned by one Marcus Low or the [marina].
>
> 2. That (a) said boat was an occupied structure, or (b) that [the marina] was an area enclosed in a manner as to provide a place for the keeping of valuable property secure from theft as defined in instruction No. 8.
>
> 3. That the defendant had no right, license or privilege to enter or remain in said occupied structure or area.
>
> 4. That such occupied structure and/or enclosed area were not open to the public at the time.
>
> 5. That at said time it was the intent of the defendant to commit a theft.

*Id.* at 522–23. We held that "[I]f substantial evidence is presented to support each alternative method of committing a single crime, and the alternatives are not repugnant to each other, then unanimity of the jury as to the mode of commission of the crime is not required." *Id.* at 523 (alteration in original) (quoting *State v. Arndt*, 529 P.2d 887, 889 (Wash. Ct. App. 1974)).

The facts of *Duncan* provide context for that marshaling instruction. The marina was part of the Lindsey Park Yacht Club in Davenport, with slips for boats along the Mississippi River. *Id.* at 520. "The marina is surrounded on the land side by a high fence with locked gates. The fence extends out into the water for about three and a half feet on both sides." *Id.* Witnesses heard a boat alarm sound and saw Duncan run from that boat, reappear on the other side of the fence, and get into a Volkswagen, where police arrested him. *Id.* So to break into the boat, Duncan had to first break into the fenced-in marina. One follows the other. And breaking into either the marina or the boat established the crime of burglary.

But here, it was theoretically possible for Trane to endanger A.H. but not B.V., or vice versa. Yet the jury was not required to unanimously agree that all elements of the crime were proven against one specific victim. The district court correctly distinguished *Duncan* as involving a single crime of burglary that could be proved by alternative means, that is, either by breaking into the marina or by breaking into the boat (or both). By contrast, Trane was charged with endangering two children. The instruction allowed the jury to convict him even if jurors disagreed whether all the elements were proven for one victim. Like the district court, we conclude *Duncan* is distinguishable and not controlling here.

We clarified *Duncan* in *State v. Bratthauer*, 354 N.W.2d 774, 776 (Iowa 1984). In *Bratthauer*, we concluded that *Duncan* requires a two-step inquiry. *Id.*

> The first step is to determine whether the statute defines a single offense that may be committed in more than one way or instead defines multiple offenses. When a single offense is defined, the second step is to determine if the alternative modes are consistent with and not repugnant to each other.

*Id. Duncan* thus applies to a *single* alleged crime that could have been committed in either of two ways (or both). *See id. Duncan* is inapplicable when dealing with a crime allegedly committed against multiple victims.

*Duncan* relied on a Washington Court of Appeals decision, *State v. Arndt*, while subsequent precedent in that state highlights its inapplicability here. *See Duncan*, 315 N.W.2d at 523 (citing *Arndt*, 529 P.2d at 889). In *State v. Arndt*, 553 P.2d 1328, 1330–32 (Wash. 1976) (en banc), the Washington Supreme Court affirmed the court of appeals decision quoted in *Duncan* and held that when a single crime can be committed in multiple ways, the jury need not unanimously agree on which mode the defendant used to commit the crime. Instead, the jury must be unanimous only as to the fact that the charged crime occurred. *Id.*

The Washington Supreme Court subsequently distinguished *Arndt* in *State v. Stephens*, 607 P.2d 304 (Wash. 1980) (en banc), a case not cited in *Duncan*. Stephens allegedly fired a weapon in the direction of two individuals (Richard Heieck and Norman Jahnke) and was charged with one count of assault. *Id.* at 305. The marshaling instruction told the jury to find the defendant guilty if they determined that "the defendant knowingly assaulted Richard Heieck or Norman Jahnke." *Id.* The Washington Supreme Court held that this instruction violated the defendant's right to a unanimous jury verdict, and distinguished *Arndt* as follows:

> In *Arndt*, we held that when alternative means of committing a single crime are charged and substantial evidence exists to support each alternative, jurors need not be unanimous as to the mode of commission. Unlike *Arndt*, the instant case involved one mode of commission under [the statute]. Further, instruction No. 6A related

to the fact of whether the charged crime had been committed, not to alternative modes of commission. The instruction, in effect, split the action into two separate crimes (assault against Jahnke and assault against Heieck), while the information charged only one.

*Id.* at 306. The district court correctly relied on *Stephens* rather than *Duncan* and *Arndt.* Because the marshaling instruction permitted the jury to convict Trane without unanimously finding a single crime had been committed as to either A.H. or B.V., the instruction was improper.

Trane was charged with one count of child endangerment committed against two boys. The statute criminalizing child endangerment lists eight different ways an individual can commit the crime. *See* Iowa Code § 726.6(1)(*a*)–(*h*) (2015). However, the marshaling instruction listed only one way: whether Trane "[k]nowingly act[ed] in a manner that create[d] a substantial risk to a child or minor's physical, mental or emotional health or safety." *Id.* § 726.6(1)(*a*). Therefore, that instruction would have allowed the jury to convict Trane without unanimously determining if a crime occurred. For example, the instruction would have allowed six jurors to find Trane created a substantial risk to the health of B.V. but not A.H., while the other six jurors found he created a substantial risk to the health of only A.H. but not B.V. Under the marshaling instruction given, the jury could convict Trane without unanimously agreeing that a completed crime had been committed against either boy.

This would be a different case if the marshaling instruction had listed several different means for committing child endangerment against a single victim. However, the marshaling instruction listed only one mode of commission and improperly applied it with "and/or" language for each element as to two different victims. Other courts have identified the same problem and reached the same conclusion as *Stephens*. *See, e.g.*, *State v. Stempf*, 627 N.W.2d 352, 354

(Minn. Ct. App. 2001) ("Where jury instructions allow for possible significant disagreement among jurors as to what acts the defendant committed, the instructions violate the defendant's right to a unanimous verdict."); *State v. Gentry*, 869 A.2d 880, 882 (N.J. 2005) (per curiam) (holding that the jury must "agree unanimously on which acts were committed against which victim"); *State v. Lyons*, 412 S.E.2d 308, 314 (N.C. 1991) ("The instructions thus were fatally ambiguous because the jury could have returned a verdict of guilty without all twelve jurors agreeing that defendant assaulted a particular individual.").

The State relies heavily on inapposite single-victim cases such as *Schad v. Arizona*, which addressed whether unanimity was required on whether the death of one victim was felony murder or premeditated murder. 501 U.S. 624, 640–45 (1991), *abrogated on other grounds by Ramos*, 590 U.S. 83. Single-victim cases are distinguishable from cases like Trane's where multiple victims are lumped together in one count with "and/or" language in the marshaling instruction for each element. Jury Instruction No. 31 would have allowed fewer than twelve jurors to convict Trane of child endangerment because some could find he put A.H. at risk but not B.V. or vice versa. This is a problem of the State's making. The State could have asked for separate jury instructions or special verdicts for each victim or charged separate crimes with separate verdict forms for each victim.

In short, Jury Instruction No. 31 permitted the State to allege a crime against two victims without ensuring jury unanimity as to a completed crime against at least one victim. The instruction violated Trane's right to a unanimous verdict. We hold that Trane's trial counsel breached an essential duty by not objecting to the erroneous marshaling instruction for child endangerment.

Next, Trane must show that he was prejudiced by his trial counsel's deficient performance. To prove prejudice in this context, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Smith v. State,* 7 N.W.3d 723, 727 (Iowa 2024) (alteration in original) (quoting *Strickland,* 466 U.S. at 694). "In assessing the probability of a different result[,] . . . we consider whether our confidence in the outcome of [Trane's] trial is undermined" due to the erroneous instruction. *State v. Harris,* 891 N.W.2d 182, 188–89 (Iowa 2017).

The State argues that Trane was not prejudiced because A.H. and B.V. were victims of the same mistreatment—prolonged placement in an OSS room resulting in severe weight loss—such that it is implausible that jurors did not reach the same conclusion as to both victims. On our de novo review, we agree with the State that Trane failed to satisfy his burden to show prejudice. Trane conceded the first two elements of the marshaling instruction—that he had custody or control over the boys and that they were under the age of fourteen. The fighting issue was the third element: whether Trane "knowingly acted in a manner that he was creating a substantial risk to [B.V.] *and/or* [A.H.]'s physical or mental or emotional health or safety." (Emphasis added.)

Trane's theory of defense at trial was that he had overall responsibility for running the school and relied on staff and teen mentors to monitor each child while in an OSS room. This theory applied equally to both A.H. and B.V. Trane's evidence did not materially differentiate between the two boys. Trane's trial counsel argued in summation that the State "has not proven either that [B.V.] or [A.H.] were at a substantial risk of safety." She further argued that the evidence showed that "[t]hey were monitored. They had teen mentors available. . . . There was someone watching them to make sure that they didn't

hurt themselves." Trane's trial strategy was all or nothing; the jury would find neither boy was endangered, or both were. As Trane's trial counsel testified in her deposition, "[W]e were arguing them both [(A.H. and B.V.)] as one general course of conduct, not conduct specific to each of them, because the allegations were similar with regard to each of them."

The PCR judge and our court alike for this prejudice analysis must rely on cold transcripts from the criminal trial and the deposition and affidavit testimony introduced at the PCR hearing without any live testimony. Trane's appellate briefing does not identify evidence differentiating A.H. from B.V. Nor did Trane or his trial counsel in the PCR proceedings identify evidence putting those boys in different positions. Our own review of the record shows the child victims were similarly situated, with both experiencing alarming weight loss after comparable time in the OSS. So we are unconvinced there is a reasonable probability of a different outcome had the marshaling instruction not used "and/or" language referring to A.H. and B.V.

We have found no prejudice when a defense based on an issue erroneously omitted from a jury instruction was factually implausible. *See Kuhse*, 937 N.W.2d at 631. In *State v. Kuhse*, the defendant was charged with domestic abuse assault causing bodily injury. *Id.* at 625. He argued that he acted in self-defense. *Id.* The marshaling instruction for assault erroneously failed to indicate that assault can occur only if the defendant acts "without justification." *Id.* at 625–27. We held that even if the defendant's counsel performed deficiently by failing to object to the marshaling instruction, no prejudice existed because his claim of self-defense seemed implausible based on the evidence presented at trial. *Id.* at 630–31. Specifically, the 190-pound defendant strangled his 105-pound wife and slammed her head against the wall and furniture, sending

her to the hospital with well-documented injuries while he had a scratch on his nose and a bruise on his arm. *Id.* at 624–25. Trane's defense that he did not endanger B.V. or A.H. is not implausible. But considering the way the case was tried, the jury was highly unlikely to find he endangered one boy but not the other. The boys were essentially in the same position for the purpose of determining Trane's criminal liability for child endangerment. Thus, "our confidence in the outcome of [Trane's] trial is [not] undermined" by the erroneous instruction. *Harris,* 891 N.W.2d at 188–89.

In *State v. Harris*, the marshaling instruction for going armed with intent omitted the element of "movement." *Id.* at 185. Substantial evidence supported a finding of movement, although "the evidence of Harris's movement was not great." *Id.* at 189. Yet "we conclude[d] our confidence in the jury verdict is undermined because . . . the flawed jury instruction did not require the jury to make a finding on that element of the crime." *Id.* But here, the jury was required to find that the State proved the third element as to one or both boys. *Harris* does not support Trane's prejudice argument.

We hold that Trane has failed to show prejudice. For that reason, the district court erred by granting Trane a new trial on the child endangerment charge. We reverse the district court on the State's cross-appeal.

## IV. Disposition.

For the foregoing reasons, we affirm the district court's ruling denying relief on the severance claim and reverse the district court's ruling granting a new trial on the child endangerment charge.

**Affirmed on Appeal; Reversed on Cross-Appeal.**